**Opinion filed March 31, 2014**



## In The

# Eleventh Court of Appeals

_____

## No. 11-12-00068-CR

_____

## SANDRELLA LAKAY HILL A/K/A
## SANDRELLA SPRAGLIN, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39090**

## O P I N I O N

Sandrella Lakay Hill a/k/a Sandrella Spraglin appeals her conviction of aggravated robbery. The jury found Appellant guilty, found two enhancement allegations to be "true," and assessed punishment at confinement for twenty years and a $5,000 fine. The trial court sentenced Appellant accordingly. Although there was sufficient evidence to support Appellant's conviction, a harmful constitutional error did occur when defense counsel was precluded from asking a

proper question, during voir dire, on the full range of punishment. Thus, we reverse and remand for a new trial.

## I. *The Charged Offense*

Section 29.02(a) of the Texas Penal Code defines robbery as follows: "A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another; or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a) (West 2011). The offense becomes aggravated if the person "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(2).

The grand jury included two enhancement paragraphs in Appellant's indictment. The first dealt with a prior second-degree felony conviction in 2000 for burglary of a habitation.[1] The second dealt with a prior third-degree felony conviction in 2000 for escape while under arrest.[2]

## II. *Evidence at Trial*

Jesse Don Spain testified that on August 12, 2011, he was asleep on his couch in his apartment when, after 4:00 a.m., he heard a knock on his door. Spain opened the door and saw "Sleepy," a/k/a James Andrew Richardson, and Appellant, whom he knew because Appellant had been in his apartment two times before and Richardson was her boyfriend. Spain told them to go away, closed the door, and went back to bed, but they knocked on the door again a few minutes later. Spain yelled through the door for them to go away, but they continued to knock. Spain got up because he was worried they would wake the neighbors, and he opened the door to tell them to leave. When Spain turned the doorknob, Richardson pushed the door in and knocked Spain over a love seat.

---

[1]TEX. PENAL CODE ANN. § 30.02 (West 2011).

[2]*Id.* § 38.06 (West Supp. 2013).

2

Spain said that Richardson immediately jumped on him and swung at him with his fists. Spain said that Richardson pressed his arm against Spain's neck, choked him, and remarked to him, "You ain't so smart now, are you?" As Richardson and Spain wrestled, Appellant took scissors from Spain's end table and stabbed Spain in the stomach. Richardson then pinned Spain's head down so Spain could not move, and Appellant unplugged an upright four-foot fan and used it to hit Spain in the face. Richardson continued to hold Spain's head down so that Appellant could hit Spain with the fan several times. Spain also said that Richardson later grabbed a curtain and tried to smother him.

Meanwhile, Appellant unplugged Spain's television, but when Spain escaped from Richardson's hold, Spain heard Appellant go to the kitchen and rummage through the silverware. Appellant took a steak knife from the silverware drawer, walked back into the living room, and stabbed Spain in the back three times while Spain struggled with Richardson. When Appellant tried to stab Spain's head, Richardson told Spain, "If you don't quit fighting and be quiet, we're going to stab you in your head." Spain thought they were going to kill him.

Appellant unplugged wires from the television and pulled it to the end of the piece of furniture it rested on, and the next time Spain looked over, the television was outside the apartment on the porch. As Spain gasped for breath and gathered himself, Richardson and Appellant left the apartment. Spain did not see who took the television from the porch.

Richardson and Appellant testified to a different version of events than Spain. Appellant testified that, on the night of the alleged robbery, she and Richardson were at Appellant's mother's apartment when they stopped by Spain's apartment in the complex across the street. According to Appellant, Spain had called her earlier that day and told her to come to his apartment, but she declined to go. Appellant had known Spain about six or seven months, and at his invitation,

3

she had been to his apartment approximately four times before this incident. Appellant went to Spain's apartment on the night of the alleged offense because Spain had invited her earlier that evening and had given her money on prior occasions and she wanted to see if she could get some money from him.

Appellant and Richardson walked to Spain's apartment and knocked on the door. Appellant and Richardson testified that Spain opened the door and invited them in and that neither Appellant nor Richardson used any physical force to enter the apartment. While inside, Appellant saw Spain and Richardson smoke crack cocaine out of pipes; Richardson also testified that he smoked crack cocaine with Spain. Appellant and Richardson testified that Spain asked Appellant if she wanted to spend the night and that, when she said no, Spain asked her if she wanted to have sex for payment. Appellant did not agree to have sex with Spain but agreed to "get him off, like masturbation" for $40. Appellant demanded that Spain take a shower, which he did, and then Appellant and Spain went into the bedroom while Richardson sat on the couch in the living room. Spain gave Appellant $40, and Appellant performed a sexual act on him. However, when Appellant refused to have intercourse, Spain became angry; Appellant then left the money on the nightstand, opened the bedroom door, and went into the living room where Richardson was sitting.

Still angry, Spain followed Appellant into the living room and aggressively pushed Richardson. Spain and Richardson wrestled and fought each other using their fists. Appellant testified that she did not observe anyone use a weapon and that she was never involved in the altercation between Spain and Richardson. Appellant said Richardson and Spain knocked over the television during the fight. After they fought for five or ten minutes, Richardson and Appellant left the apartment. Appellant said that Richardson took the television because it was broken after it fell during the fight. Appellant said that she never entered the

4

kitchen and that Spain was never stabbed while she and Richardson were inside Spain's apartment.

Richardson testified he and Appellant were at Appellant's mother's apartment when Appellant decided she wanted to go to Spain's apartment because he had called her earlier. When Richardson and Appellant got to Spain's apartment, Spain opened the door and let them inside because Richardson had some crack cocaine to smoke with Spain. After Richardson and Spain smoked crack cocaine, Spain and Appellant went into the bedroom while Richardson watched an adult video in the living room. Richardson said that, between 30 minutes and an hour later, Appellant came out of the bedroom and that Spain, who was "mad," followed her out of his bedroom. Richardson said that he asked what was wrong and that Spain became angrier and told Richardson and Appellant to "get out."

Richardson testified that Spain tried to "big-face" him, which meant Spain tried to put his hands on Richardson's face and push him. Richardson said that he sidestepped Spain, that Spain fell down, that he fell on top of Spain, and that the television fell off the table and broke. Spain and Richardson fought, and Richardson became even angrier because he had hurt his wrist in the altercation. According to Richardson, Spain said, "You're going to jail," and Richardson said, "F your TV" and then stomped on the television with his foot.

Richardson admitted to punching and elbowing Spain in the face but said that he was only defending himself, that he never saw a knife or scissors, and that Spain was never stabbed while they were in the apartment. Richardson said Appellant had yelled at both of them to stop and then left the apartment. Richardson said Appellant never engaged in any attack on Spain. Richardson said that, after he stomped on the television, he picked it up and threw it over the ledge of the second-story apartment. Richardson then left the apartment and put the

5

broken television behind a bush on the side of the apartment complex; Appellant also said she saw Richardson put the television behind the bush.

Bradley Gene Barnes, a patrol officer for the City of Midland Police Department, testified he responded to a burglary call at Spain's apartment around 4:45 a.m. on the date of the alleged offense. Officer Barnes testified that, when Spain answered the door, his emotional state was "pretty hysterical" and he had blood on his face, hands, and abdomen. Spain also had lacerations and swelling on his face and stab wounds on his flank.

After their arrest, Appellant testified she and Richardson had a phone conversation in which they discussed getting Spain a new television in return for his signing a paper "in his own handwriting": what the State described as an affidavit of non-prosecution. Richardson's mother testified that Richardson had said he could not take the television because he was "on foot" and because it was "too heavy"; Richardson also testified that he did not take the television because it was "too heavy." On cross-examination, the State elicited testimony from Appellant that she would not tell on Richardson but would do what she needed to do to get herself out first.

### III. *Issues Presented*

Appellant has presented three issues on appeal: (1) the trial court abused its discretion when it refused Appellant the opportunity to question the entire jury panel on the full range of punishment; (2) the trial court failed sua sponte to instruct the jury on the burden of proof for extraneous offense evidence adduced in the punishment phase; and (3) the State failed to prove sufficient evidence to convict Appellant beyond a reasonable doubt of aggravated robbery.

We will address the sufficiency of the evidence first, followed by the first issue. As we explain below, we overrule Appellant's sufficiency challenge; however, we are constrained to sustain her complaint on her inability to question

6

all prospective jurors on the full range of punishment—the range that would be applicable if the State proved an aggravated robbery conviction and proved "true" to the felony enhancement allegations. And, in light of our ruling on her first issue, we need not address her second issue.

## IV. *Sufficiency of the Evidence*

In her third issue, Appellant challenges the sufficiency of the evidence to support her conviction. According to Appellant, after considering all of the evidence, the jury was not rationally justified in finding her guilty beyond a reasonable doubt because the evidence did not prove that she intentionally, knowingly, or recklessly caused Spain bodily injury by hitting or striking him with a fan or by cutting or stabbing him with a knife, which was alleged to be a deadly weapon. We disagree.

### A. *Standard of Review*

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.— Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases. *Isassi*, 330 S.W.3d at 638.

7

*B. Analysis*

In order to find Appellant guilty of aggravated robbery, the jury had to find that Appellant committed aggravated robbery by using or exhibiting a deadly weapon: a knife. *See* PENAL § 29.03(a)(2). The jury's finding of guilt turned on whether the jury believed Spain's account rather than that of Richardson and Appellant. After reviewing the entire record and according deference to the factfinder's duty to resolve conflicting testimony, the cumulative effect of the evidence proves that Appellant committed aggravated robbery by using or exhibiting a deadly weapon.

Spain testified that he did not give permission to Richardson or Appellant to enter his apartment and that they forced their way into his apartment. Spain testified that Richardson knocked him over and swung at him with his fists, while Appellant unplugged the television. Spain also testified that Appellant stabbed him with scissors and hit him with a fan. Spain further testified he heard Appellant go to the kitchen, get a knife, and return to the living room where she stabbed him. Spain said that Richardson had told him, "If you don't stop fighting and be quiet, we're going to stab you in your head." Spain thought they were going to kill him, and he suffered injuries to his head, back, abdomen, and flank. Richardson testified he threw the television off the balcony of the second floor apartment, and Appellant said she and Richardson left.

After her arrest, Appellant and Richardson had a phone conversation in which they discussed getting Spain a new television in return for his signing a paper "in his own handwriting": what the State described as an affidavit of non-prosecution. On cross-examination, Appellant testified she would not tell on Richardson but would do whatever she had to do to get out of jail.

From the foregoing evidence, the jury could rationally infer that Richardson and Appellant forcefully entered Spain's home with the intent to obtain or maintain

8

control of his property. Further, given Spain's testimony regarding Appellant's use of a steak knife to stab Spain and the photographs of Spain's stab wounds and injuries to his face, the jury could also rationally infer that Appellant intentionally used the steak knife as a deadly weapon in the commission of the robbery. We overrule Appellant's third issue.

## V. *Voir Dire Questions on Punishment Range*<br>*if State Proved an Enhancement Allegation*

In her first issue, Appellant contends that her counsel should have been allowed to ask each of the members of the venire panel whether they could consider the full range of punishment of fifteen years to ninety-nine years or life: the range that would be applicable should the State prove the aggravated robbery charge and a felony enhancement. The State appears to concede that this was an error by the trial court, but it argues that there was no harm. Appellant contends that she was harmed by the error.

### A. *Standard of Review*

The trial court may impose reasonable restrictions on exercising voir dire examination. *Thompson v. State*, 267 S.W.3d 514, 517 (Tex. App.—Austin 2008, pet. ref'd) (citing *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991)). "We review the trial court's decision to limit voir dire under an abuse of discretion standard. The trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry." *Id.* (citation omitted) (citing *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995)).

A defendant is entitled to a speedy trial before an impartial jury and has the right to be heard by himself or counsel, or both. TEXAS CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005) (rights of accused), art. 1.051 (West Supp. 2013) (right to counsel). A long line of cases has held that the "right to counsel" under the Texas constitution includes the right to pose proper questions

during voir dire examination. *Jones v. State*, 223 S.W.3d 379, 381 (Tex. Crim. App. 2007). The State agrees that counsel for the prosecution and counsel for the defense may inform the venire panel of the range of punishment that would be available if a prior felony conviction is proven for enhancement. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. [Panel Op.] 1982).

> [T]he right to be heard at voir dire is a right to *participate* in the proceedings in a certain way. The denial of that participation is the constitutional violation, even if it is later determined that the defense was not compromised by that denial. Such a later determination would be relevant to a harm analysis but is not appropriate for determining whether this type of constitutional violation occurred.

*Jones*, 223 S.W.3d at 383. The State conceded that a trial court's denial of a defendant's right to ask a proper question during voir dire is an error of constitutional magnitude. But with the recent holding of the Court of Criminal Appeals in *Easley v. State*, the proper analysis is not to apply a per se rule to a voir dire error but to determine if the error is substantial enough to warrant a Rule 44.2(a) analysis; if not, then the error is reviewed under Rule 44.2(b). *Easley v. State*, No. PD-1509-12, 2014 WL 941451 (Tex. Crim. App. Mar. 12, 2014); *see* TEX. R. APP. P. 44.2. In *Easley*, the court held:

> [W]e overrule *Plair*[3] to the extent it holds that erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a *per se* violation of the right to counsel. This, of course, is different from holding that such an error may never rise to the level of constitutional magnitude. There may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis.

*Id.* at *5. Under Rule 44.2(b), which applies to nonconstitutional error, a judgment is affirmed unless the error affects the appellant's substantial rights or deprives her

---

[3]*Plair v. State*, 279 S.W. 267 (Tex. Crim. App. 1925).

10

of a fair trial. TEX. R. APP. P. 44.2(b); *Easley*, 2014 WL 941451, at \*4, \*6–7 (citing *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001)). But, under Rule 44.2(a), if the error is a constitutional violation, a judgment must be reversed unless it is determined "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); *see Easley*, 2014 WL 941451, at \*5.

### B. Analysis

A juror must be able to consider the full range of punishment for an offense, and a defendant's voir dire question about a juror's ability to do so is generally proper. *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010); *see* CRIM. PROC. art. 35.16(c)(2) (West 2006). If a juror cannot consider an offense's full range of punishment, the juror is challengeable for cause. *Cardenas*, 325 S.W.3d at 184–85; *see also Standefer v. State*, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001); *Banda v. State*, 890 S.W.2d 42, 55 (Tex. Crim. App. 1994) (explaining that a "person who testifies unequivocally that he could not consider the minimum sentence as a proper punishment for [an] offense . . . is properly the subject of a challenge for cause").

The trial court, based on an objection by the State, did not allow defense counsel to ask veniremembers numbered 28 and above whether, if the charge against Appellant was proved beyond a reasonable doubt and a felony enhancement was proved true, they could consider the full range of punishment from fifteen years to ninety-nine years or life. Defense counsel's question was presented as follows:

> Now, let me ask you this. Under our law, if it is shown that a person has previously been convicted of a felony, if it is proven they've previously been convicted of a felony, then a second-degree felony, robbery, would be punished as a first-degree. In other words,

it bumps the range of punishment up from two to 20 to five to 99. Everybody follow me so far?

And for an aggravated robbery, which would be a first-degree felony, if it is shown that the person has been convicted of a prior felony, it bumps up the punishment to a minimum of 15 to 99 or life. So it doesn't start out at five. It's -- 15 now is the floor, the minimum. Does everybody follow me on that?

Is there anybody here on this first row who could not consider the minimum of 15 years for aggravated robbery with a prior felony conviction?

The veniremembers, who were ultimately seated as jurors one through nine, were asked this question without objection by the State. Defense counsel also asked the question individually to seventeen other veniremembers without objection, and all responded that they could consider the full range of punishment. But Veniremember Wilson, number 27, said he could not consider the minimum range of punishment of fifteen years, and the State then objected to the question arguing it was an improper attempt to qualify on a particular set of facts. Defense counsel argued it was a range-of-punishment question based on whether an enhancement was proved true. Defense counsel provided no factual details about the felony enhancement.

The trial court sustained the State's objection and, despite additional requests by defense counsel, did not allow defense counsel to ask veniremembers 28 and above the desired range-of-punishment question even though Wilson, veniremember number 27, was struck for cause because he could not consider the fifteen-year minimum. Veniremembers 28, 29, and 38 (Hamilton, Sweeney, and Ortiz, respectively)[4] were never asked the range-of-punishment question posed by defense counsel to veniremembers 1 through 27.

---

[4]Hamilton, Sweeney, and Ortiz were jurors 10, 11, and 12, respectively.

The State appears to concede that this was an error, and we agree because the question, as posed by defense counsel, was an appropriate voir dire question. *See Cardenas*, 325 S.W.3d at 184. The State also appears to concede that the error was constitutional in nature, but the State did not have the benefit of the opinion in *Easley*. *See Easley*, 2014 WL 941451, at *4–5. In light of *Easley*, we must determine if this error was a constitutional error or a nonconstitutional error. *Id.* The *Easley* court provided several examples of errors that had been deemed per se constitutional violations but actually were not constitutional violations; the court did not, however, provide an example of what would rise to the level of constitutional magnitude. *Id.* The *Easley* court stated that it is a misnomer to say that voir dire errors necessarily violate the right to counsel and that the most pertinent issue in jury selection is the right to speedy trial by an impartial jury. *Id.* at *3–4.

The *Easley* court in overruling *Plair* noted that, in *Plair*[5] as well as in *Carlis*,[6] the trial courts had refused to allow individual questioning by counsel but that both trial courts had asked questions of the entire panel.[7] *Id.* at *2–3. In *Plair*, the appellate court reversed because counsel did not get to question individual jurors. *Plair*, 279 S.W. at 269. In *Carlis*, the appellate court reversed because the trial court's questions were insufficient. *Carlis*, 51 S.W.2d at 730. The *Easley* court noted that both cases dealt with questions that defense counsel wanted to ask: in the former, the question related to burden of proof, while in the latter, it was whether the veniremembers knew the district attorney. *Easley*, 2014 WL 941451, at *2–3. These questions dealt with the defense counsel's desire to glean

---

[5]*Plair*, 279 S.W. at 269.

[6]*Carlis v. State*, 51 S.W.2d 729, 730 (Tex. Crim. App. 1932).

[7]The *Easley* court overruled *Plair* and its progeny. *Easley*, 2014 WL 941451, at *5.

13

information on veniremembers so counsel could exercise peremptory challenges. *Id.*

In this case, Appellant's counsel desired to ask a question about the ability of a juror to be open and impartial to the evidence and the full range of punishment that would be applicable, depending on the proof adduced by the State not only as to the charge of aggravated robbery but also as to the felony enhancements. Veniremember Wilson said before the trial had even begun that he could not consider the minimum punishment of fifteen years. Veniremember Wilson was excused for cause because he had prejudged the case without evidence and had acknowledged he would not follow the court's instructions. Defense counsel knew that the veniremembers ultimately seated as jurors 1 through 9 had said that they could follow the court's instruction and consider the full range of punishment, as posed in defense counsel's hypothetical. Defense counsel was entitled to know if jurors 10, 11, and 12 could do the same, but he was never allowed to ask them. In addition, the trial court never asked the question to the entire venire panel, and when defense counsel requested again to ask his range-of-punishment question to the entire panel, the trial court refused to allow the question.

We think this situation is distinguishable from *Easley* and the cases it overruled and is more like *Martinez v. State*, where the court held that the trial court erred when it refused to permit defense counsel to question the venire panel about the full range of punishment. *Martinez v. State*, 588 S.W.2d 954, 956–57 (Tex. Crim. App. [Panel Op.] 1979). Although *Martinez* relied on *Mathis v. State*, 576 S.W.2d 835, 839 (Tex. Crim. App. 1979), *overruled by Easley*, 2014 WL 941451, at *5, and on *Mathis v. State*, 322 S.W.2d 629, 631–32 (Tex. Crim. App. 1959), which relied on *Plair*, and so also is overruled, both *Mathis* cases dealt with peremptory challenges, while *Martinez* did not. It is our view that the refusal to

permit defense counsel to ask all veniremembers if they could consider the minimum punishment, as enhanced, is a constitutional violation.

Defense counsel is entitled to ask the veniremembers the question of whether they could consider the full range of punishment, and if the trial court prevents counsel from doing that, then defense counsel may not be able to discern if a juror should be struck for cause because he is unqualified. A veniremember is disqualified if he has prejudged the case or cannot follow the court's instructions. CRIM. PROC. art. 35.16(c)(2). To have such an unqualified veniremember, like Wilson, on the jury is a violation of the defendant's right to an impartial jury. *See* TEX. CONST. art. I, § 10 (providing in part, "In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury."); CRIM. PROC. art. 35.16(c)(2). We find that the error in this case is a constitutional violation that requires a Rule 44.2(a) analysis.

Therefore, the remaining issue for us to consider is whether this error did not, beyond a reasonable doubt, contribute to the conviction or punishment as assessed by the jury and was, therefore, harmless.

> [W]e assess whether appellant was harmed by denial of the proper voir-dire questions during the group, voir-dire setting by reviewing the entire record, including (1) any testimony or physical evidence admitted for the jury's consideration; (2) the nature of the evidence supporting the verdict; and (3) the character of the error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error.

*Wappler v. State*, 183 S.W.3d 765, 778 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

> We must, therefore, calculate, as nearly as possible, the probable impact on the jury of the trial court's error in refusing to allow appellant the opportunity to ask proper voir-dire questions in light of

the evidence adduced at trial, to determine whether we can conclude beyond a reasonable doubt that the error did not contribute to his conviction or punishment.

*Id.* at 777–78 (citing TEX. R. APP. P. 44.2(a), *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001), and *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000)).

Although the record and the jury strike lists reflect that nine jurors were asked the question about the full range of punishment as enhanced, three jurors were seated that were never asked this question. This is not a situation where the applicable range of punishment was covered and a different range not applicable was not covered. *See Taylor v. State*, 109 S.W.3d 443, 453–54 (Tex. Crim. App. 2003). In addition, we do not have the situation where the question was inapplicable because of the facts proven at trial. *See Dowthitt v. State*, 931 S.W.2d 244, 250–51 (Tex. Crim. App. 1996) (defendant not harmed by not being allowed to ask about probation for lesser included offense where defendant convicted of capital murder); *Jones v. State*, 843 S.W.2d 487, 498 (Tex. Crim. App. 1992) (defendant not harmed by not being allowed to ask question on parole for lesser included offense when defendant was convicted of capital murder).

The prosecutor did not ask questions about the range of punishment that would be applicable if he proved a felony enhancement. We cannot say that jurors 10, 11, and 12, who could consider a two-year minimum for a second-degree felony or a five-year minimum for a first-degree felony, could have considered a fifteen-year minimum with a felony enhancement. Veniremember Wilson said he could not and was excused for cause. Defense counsel should have been allowed to ask the others if they held views similar to Veniremember Wilson because three of them ultimately became jurors. And although Appellant was assessed a sentence close to the minimum range, we cannot tell from the record whether the

16

three jurors—10, 11, and 12—would have been able to consider the full range of punishment based on the facts proved at trial.

The State emphasized a wealth of evidence that supported Appellant's guilt, including testimony from Spain about how Richardson attacked him and how Appellant attacked and stabbed him, as well as Officer Barnes's testimony about Spain's condition after the attack. The jury heard evidence from Appellant about how she and Richardson went to Spain's apartment; how Richardson and Spain fought after she refused to have sexual intercourse with Spain for $40; how Richardson "stomped" on Spain's television, threw it out of the apartment, and later hid it; and how they both left the apartment. The jury also heard evidence of Appellant's prior convictions and how she and Richardson talked about paying Spain off in return for an affidavit of non-prosecution.

The State highlighted this evidence in closing arguments and requested a higher sentence because of Appellant's prior criminal history and the felony enhancements, which were proved "true." The State also requested a higher sentence because of the perceived continuing danger of Appellant to society. Defense counsel was entitled to know whether jurors 10, 11, and 12 could have considered a fifteen-year minimum sentence, and without knowing that information, we cannot say beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Therefore, we sustain Appellant's first issue.

## VI. *Conclusion*

We hold that a rational jury could have found Appellant guilty beyond a reasonable doubt of aggravated robbery, and we overrule her sufficiency challenge. However, we sustain her complaint that her request to question all prospective jurors on the full range of the enhanced punishment was improperly denied. And, because we cannot determine beyond a reasonable doubt that this error did not

17

contribute to her conviction or punishment, we sustain her first issue.  In light of our ruling, we need not address her second issue.

## VII. *This Court's Ruling*

We reverse the judgment of the trial court and remand the cause for new trial.


MIKE WILLSON

JUSTICE


March 31, 2014

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.