

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-16-00008-CR

_____


JOSHUA JACOBS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 14F1096-102



Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Moseley

# O P I N I O N

As a result of his unlawful contact with a twelve-year-old girl, a Bowie County jury found Joshua Jacobs guilty of aggravated sexual assault of a child.[1]  After Jacobs pled true to having previously been convicted of felony carnal knowledge of a juvenile in Louisiana, the trial court imposed the mandatory sentence[2] of confinement for life in the Correctional Institutions Division of the Texas Department of Criminal Justice.

Jacobs argues on appeal that the trial court erred (1) in enhancing his punishment by using his prior conviction in Louisiana, (2) by unreasonably restricting his voir dire of the jury, and (3) by admitting evidence of his prior conduct in Louisiana during the guilt/innocence phase of his trial in violation of Article 38.37 of the Texas Code of Criminal Procedure.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West Supp. 2016).  We find that the trial court abused its discretion in restricting Jacobs' voir dire, that the error was constitutional in scope, and that the error was harmful, mandating reversal.  Because that finding is determinative, we do not reach the other points of error.

## I.    Jacobs' Voir Dire Was Improperly Restricted

In his second point of error, Jacobs asserts the trial court abused its discretion in restricting him to referring to his prior Louisiana conviction as an "assaultive offense," rather than as a "sexual offense," during his voir dire of the jury panel.  Article 38.37, Section 2(b) allows the admission of evidence that the defendant committed a separate sexual offense specifically listed

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(B)(i) (West Supp. 2016).

[2]*See* TEX. PENAL CODE ANN. § 12.42(c)(2)(A)(i), (B) (West Supp. 2016).

2

in Article 38.37, Section 2(a)(1) or (2), to be admitted during the guilt/innocence phase "for any bearing the evidence has on relevant matters." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Jacobs sought to question the jury panel to determine whether individual members would still require the State to prove each element of the charged offense beyond a reasonable doubt if evidence of an unrelated sexual offense was proven by the State. The trial court barred him from referring to a sexual offense, but allowed him to refer to an assaultive offense instead. Jacobs argues that this was not a reasonable restriction since some panel members might have a substantially different opinion of someone who committed an unrelated sexual offense as opposed to someone who had not done so. Jacobs argues that (due to what he deems an improper restriction of his right to voir dire) he was deprived of his constitutional right to counsel.[3] The State responds by arguing that the trial court did not abuse its discretion because (1) it was seeking to avoid confusing the jury and "poisoning the panel" and (2) Jacobs was seeking a commitment from the jury that it would not be influenced by the facts of the extraneous offense even though Article 38.37 of the Texas Code of Criminal Procedure specifically allows them to be so influenced. We agree with Jacobs.

---

[3]The Texas Court of Criminal Appeals has noted that although some of its cases have characterized a trial court's unreasonable restriction of a defendant's voir dire as violating a defendant's constitutional right to counsel, it indicates that such characterization is a misnomer; it states, rather, that the most pertinent issue in jury selection is the right to a speedy trial by an impartial jury. *See Hill v. State*, 426 S.W.3d 868, 876 (Tex. App.—Eastland 2014, pet. ref'd) (citing *Easley v. State*, 424 S.W.3d 535, 539–41 (Tex. Crim. App. 2014)). Both of these rights are contained in the same provision of the Texas Constitution. *See* TEX. CONST. art. I, § 10. Because reported cases seem to hold that either objection will suffice to preserve error, it is difficult for us to say that the error has not been preserved. In the interest of justice and in an effort to comply with what we deem to be the current position of the higher court in matters such as this, we construe Jacobs' constitutional complaint to encompass both of these rights.

3

## A.    Background

Prior to voir dire, Jacobs submitted to the trial court copies of slides with questions he proposed asking the jury panel. Among those slides were questions and explanations under the heading "Innocent UNLESS Proven Guilty." Included in that series of slides, Jacobs sought to explain the impact of Article 38.37, Section 2(b), as follows:

> Evidence that the defendant has committed a separate unrelated offense described by Chapter 21 of the Penal Code (Sexual Offenses) may [sic] admitted at a trial for aggravated sexual assault of a child for any bearing the evidence has on relevant matters, including the character of the defendant, and action in conformity with character.

> But, before you can consider this type of evidence for any reason, you must believe that the allegation is true beyond a reasonable doubt.

That slide was followed by a slide explaining that the State's burden of proof does not change and stating, "You cannot convict because you believe the accused is a bad person, absent the State proving every element beyond a reasonable doubt." Then followed a series of five slides that broke down the State's burden of proof for the charged offense. The first slide asked the jury panel, "Who would not require the State to prove beyond a reasonable doubt that the charged offense occurred in Bowie County, if evidence of an unrelated sexual offense is proven beyond a reasonable doubt?" (Question 1).

The same question was asked on subsequent slides, but replacing "occurred in Bowie County" with "occurred on November 25, 2014," (Question 2), and "was committed by . . . Jacobs and that he intentionally or knowingly penetrated the sexual organ of Victoria Whiteman[4] with

---

[4]At trial, the parties made reference to the name of the child victim as "Victoria Whiteman," and we continue the use of that pseudonym. *See* TEX. R. APP. P. 9.10.

his finger." (Question 3). Jacobs also sought to ask the jury, "Who would require that the State only prove that . . . Jacobs contacted the sexual organ of Victoria Whiteman with his finger, if evidence of an unrelated sexual offense is proven beyond a reasonable doubt?" (Question 4), and "Who would not require the State to prove beyond a reasonable doubt that at the time the charged offense is alleged to have occurred that Victoria Whiteman was under 14 years old, if evidence of an unrelated sexual offense is proven beyond a reasonable doubt?" (Question 5).

The trial court acknowledged that Jacobs could question the jury panel on Article 38.37, but was concerned that referring to the offenses listed in Article 38.37 as sexual offenses, and referring to a sexual offense in Questions 1 thru 5 might be too specific, and that it would run the risk of poisoning the jury panel. The trial court informed Jacobs that it would not have a problem with him referring to an "unrelated felony offense" or an "unrelated offense." Jacobs explained to the trial court that he first addressed the State's burden of proof and that the defendant is presumed innocent until the State proves each element of the charged offense beyond a reasonable doubt, then addressed Article 38.37. He then argued each of the questions were proper commitment questions because they ask if the jury panel can follow the law. Jacobs objected to the trial court forbidding him to refer to "sexual offense" in the questions. After forbidding the use of the phrase "sexual offense" in the questions and explanation of Article 38.37, the trial court agreed that Jacobs could use the term "assaultive offense" instead. During voir dire, Jacobs referenced only

5

"assaultive offenses" and "an unrelated assaultive offense" in the questions and explanation of Article 38.37.[5]

### B. Standard of Review

A "trial court may impose reasonable restrictions on . . . voir dire examination." *Thompson v. State*, 267 S.W.3d 514, 517 (Tex. App.—Austin 2008, pet. ref'd) (citing *Boyd v. State*, 811 S.W.2d 105, 115 (Tex. Crim. App. 1991)). "We review the trial court's decision to limit voir dire under an abuse of discretion standard." *Id.* (citing *Boyd*, 811 S.W.2d at 115). "The trial court abuses its discretion when it limits a proper question concerning a proper area of inquiry." *Id.* (citing *Dinkins v. State*, 894 S.W.2d 330, 345 (Tex. Crim. App. 1995). Further, it is an abuse of discretion when a trial court's "denial of the right to ask a proper question prevents determination of whether grounds exist to challenge for cause or denies intelligent use of peremptory challenges." *Mason v. State*, 116 S.W.3d 248, 253 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (quoting *Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989)).

The Texas Constitution guarantees a defendant the right to "trial by an impartial jury" and "of being heard by himself or counsel, or both." TEX. CONST. art. I, § 10. Texas courts have long recognized that "the constitutionally guaranteed right to counsel . . . encompasses the right to question prospective jurors in order to intelligently and effectively exercise peremptory challenges and challenges for cause during the jury selection process." *McCarter v. State*, 837 S.W.2d 117, 119 (Tex. Crim. App. 1992) (citing *Naugle v. State*, 40 S.W.2d 92, 94 (Tex. Crim. App. 1931)).

---

[5]On appeal, Jacobs does not assert error in being barred from referring to "sexual offense" in his Article 38.37 explanation.

Consequently, "trial judges should allow defendants much leeway in questioning a jury panel during voir dire." *Id.* at 120 (quoting *Ex parte McKay*, 819 S.W.2d 478, 482 (Tex. Crim. App. 1990)). When the trial court improperly limits a defendant's voir dire examination, it may constitute a violation of the right to counsel. *See Easley v. State*, 424 S.W.3d 535, 538, 541 (Tex. Crim. App. 2014) (overruling *Plair v. State*, 279 S.W. 267 (Tex. Crim. App. 1925), and its progeny to the extent they hold that "erroneously limiting an accused's or counsel's voir dire presentation is constitutional error because the limitation is a *per se* violation of the right to counsel"); *McCarter*, 837 S.W.2d at 119, 122. In addition, when an improper limitation on voir dire prevents a defendant from determining whether a veniremember should be disqualified for cause, the defendant's right to an impartial jury is violated. *Hill v. State*, 426 S.W.3d 868, 877 (Tex. App.—Eastland 2014, pet. ref'd).

First, we must determine whether the trial court abused its discretion by limiting proper questions concerning a proper area of inquiry.[6] If we find that it did, then we must determine whether its error was a constitutional error or a nonconstitutional error. *See Easley*, 424 S.W.3d at 540–41; *Hill*, 426 S.W.3d at 876. The nature of the error will determine our harm analysis under Rule 44.2 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(a), (b).

---

[6]Since the trial court allowed the modified questions to be asked, it is apparent that Jacobs was not attempting to prolong voir dire. *See McCarter*, 837 S.W.2d at 121.

**C.     Analysis**

**1.     The Trial Court Abused its Discretion**

In each of the questions Jacobs sought to ask the jury panel, he asked the prospective jurors whether they would resolve an element of the State's case based solely on the State proving an unrelated sexual offense.  They were, then, commitment questions.  *See Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001) ("[A] question is a commitment question if one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question.").  While commitment questions are sometimes improper, "[w]hen the law requires a certain type of commitment from jurors, the attorneys may ask the prospective jurors whether they can follow the law in that regard." *Id.* at 181.  For a commitment question to be proper, it must meet two criteria:  (1) "one of the possible answers to that question must give rise to a valid challenge for cause," and (2) it "must contain *only* those facts necessary to test whether a prospective juror is challengeable for cause." *Id.* at 182.

In order to obtain a conviction, due process requires the State to prove each element of the charged offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 315–16 (1979); *Ladd v. State*, 3 S.W.3d 547, 556–57 (Tex. Crim. App. 1999).  A defendant may challenge for cause any juror that "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely." TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (West 2006).  By each of the questions Jacobs wanted to ask, he sought to determine whether the prospective jurors would follow the law and require the State to prove the individual elements of the charged

8

offense beyond a reasonable doubt if the State had proven an unrelated sexual offense beyond a reasonable doubt. Any potential juror who would not require the State to prove the individual elements of the charged offense if it had proven an unrelated sexual offense would be "challengeable for cause under Article 35.16(c)(2) for having a bias or prejudice against a law applicable to the case upon which the defense is entitled to rely." *See Ladd*, 3 S.W.3d at 558–59.

The State argues that under Article 38.37, the jury is entitled to be influenced by the facts of the unrelated extraneous acts in considering whether the State has proven its case beyond a reasonable doubt. As we have previously pointed out, Article 38.37, Section 2(b), "allow[s] the jury to consider the extraneous offenses 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.'" *Reichle v. State*, No. 06-14-00073-CR, 2015 WL 392846, at *7 (Tex. App.—Texarkana Jan. 30, 2015, pet. ref'd) (mem. op., not designated for publication)[7] (quoting TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b)). By the plain language of the statute, Article 38.37, Section 2(b), only allows the admission (and, therefore, consideration by the jury) of the evidence of the extraneous act for any bearing it may have on "relevant matters." Thus, in regard to the individual elements of the charged offense, evidence of the extraneous offense can only properly be considered in regard to those elements to which it is relevant. Therefore, as to those individual elements of the charged offense to which evidence of the extraneous offense is not relevant, Jacobs is entitled to rely on the State's burden to prove those elements beyond a reasonable doubt without

---

[7]Although unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

9

the jury considering the extraneous-offense evidence. If a potential juror would not require the State to prove these elements if it proved the extraneous offense, then the juror would be challengeable for cause. Conversely, for those elements to which the extraneous-offense evidence is relevant, Jacobs is not entitled to rely on the jury making its determination without considering the extraneous-offense evidence. As to the relevant elements, a potential juror who would rely on the proof of the extraneous offense would not be challengeable for cause. Therefore, we must determine whether the questions Jacobs sought to ask involved elements to which evidence of an unrelated offense would be relevant.

Under the relevant statute and the indictment, the State was required to prove that (1) Jacobs, (2) on or about November 25, 2014, (3) in Bowie County, Texas, (4) intentionally or knowingly (5) caused the penetration of the sexual organ of Whiteman, (6) who was younger than fourteen years of age, (7) with his finger. *See* TEX. PENAL CODE ANN. § 22.021(a)(B)(i). Questions 1, 2, and 5 addressed the State's elements regarding the place and date of the offense, and the age of Whiteman at the time of the offense, respectively. Evidence of an unrelated sexual offense would have no relevant bearing on these elements. Therefore, a potential juror who would not require the State to prove any one or more of these elements beyond a reasonable doubt, if the State proved an unrelated sexual offense, would be challengeable for cause. We find that Questions 1, 2, and 5 meet the first prong of the *Standefer* criteria.

Question 3 is a compound question that addressed the State's elements regarding the identity of Jacobs, his mens rea, and whether he penetrated Whiteman's sexual organ with his finger. Article 38.37, Section 2(b), specifically allows evidence of a separate sexual offense to

10

establish the character of the defendant and acts performed in conformity with his character, as well as any bearing it may have on relevant issues. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Therefore, the jury would be entitled to consider the unrelated sexual offense, infer that Jacobs acted in accord with his character exhibited therein, and determine that Jacobs committed the charged offense intentionally and knowingly. Since this would be legally sufficient evidence of this element of the State's case, a potential juror would not be challengeable for cause by answering in the affirmative to this part of the question. Under this hypothetical, the evidence of the unrelated sexual offense may also be relevant in determining whether the State had proven beyond a reasonable doubt that Jacobs penetrated Whiteman's sexual organ with his finger. For instance, if the victim testified that Jacobs touched her sexual organ, but was equivocal about whether penetration had occurred, a reasonable jury might infer that Jacobs acted in conformity with the character exhibited in the unrelated sexual offense and conclude that penetration had occurred. Since some additional evidence would be needed to establish penetration beyond a reasonable doubt, a potential juror answering affirmatively to this part of the question may be subject to challenge for cause. However, Question 3, a compound question, can be answered affirmatively if a prospective juror would consider the fact of the prior, unrelated sexual offense at least partial support for a finding beyond a reasonable doubt that Jacobs had an intentional or knowing mens rea as to his currently charged behavior. Therefore, because such an affirmative answer might not necessarily support a valid challenge for cause, we find Question 3 does not meet the first prong of the *Standefer* criteria.

Question 4 sought to determine whether, because of the unrelated sexual offense, a potential juror might convict Jacobs of the charged offense based on proof of a lesser, uncharged offense. Jacobs was charged with aggravated sexual assault of a child, which required proof that Jacobs penetrated Whiteman's sexual organ with his finger. In Question 4, Jacobs posed a hypothetical situation in which the State only proved indecency with a child.[8] Question 4 asked, "Who would require that the State only prove that [Jacobs] contacted the sexual organ of Victoria Whiteman with his finger, if evidence of an unrelated sexual offense is proven beyond a reasonable doubt?"

In this hypothetical, evidence of an unrelated sexual offense would not be relevant in determining whether penetration had occurred, since the State only proved contact. In other words, even if the jury inferred that Jacobs acted in accord with the character evidenced by the unrelated sexual offense, it could not reasonably conclude that penetration occurred when the only other evidence was that it did not occur. Therefore, a potential juror who would only require the State to prove contact in order to convict Jacobs of aggravated sexual assault would have a bias against the law requiring the State to prove all of the elements of the charged offense beyond a reasonable doubt and would be challengeable for cause. We find that Question 4 meets the first prong of the *Standefer* criteria.

The next step in the *Standefer* analysis is to determine whether Questions 1, 2, 4, and 5 include only those facts necessary to lead to a valid challenge for cause. *Standefer*, 59 S.W.3d at 183. The State argues that referring to "sexual offenses" is too specific and points to our prior

---

[8]*See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011).

12

decision in *Reichle*, upon which the trial court relied, arguing that the trial court's ruling barring the use of the term was reasonable. *See Reichle*, 2015 WL 392846, at *7. In *Reichle*, which also involved Article 38.37, Section 2(b), we upheld the trial court's limiting the appellant from discussing the specific facts of the State's enhancement paragraph in his voir dire. *Id.* at *8. We pointed out that "Texas courts allow parties to voir dire 'the jury venire about the law applicable to the enhancement of punishment as long as the explanation is hypothetical and does not inform the jury of any specific allegation in the enhancement paragraph of the indictment.'" *Id.* (quoting *Hanson v. State*, 269 S.W.3d 130, 134 (Tex. App.—Amarillo 2008, no pet.)). However, in *Reichle* the appellant argued that he should have been able to discuss the specific facts of the enhancement paragraph and of the Article 38.37 extraneous offenses. *Id.* In this case, Jacobs did not seek to discuss the specifics of either the enhancement paragraph or of the Article 38.37 extraneous offenses. Rather, Jacobs sought to characterize the Article 38.37 extraneous offenses in a general manner as "sexual offenses" in his explanation of that statute.

Article 38.37 strictly limits the type of extraneous acts that may be introduced in the guilt/innocence phase in the trial of a sexual offense against a child.[9] All of the offenses for which

---

[9]*See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Article 38.37, Section 2(b), provides that only "evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) and (2)." *Id.* The offenses described by those subsections are:

    (1)    an offense under any of the following provisions of the Penal Code:

    (A)    Section 20A.02, if punishable as a felony of the first degree under Section 20A.02(b)(1) (Sex Trafficking of a Child);

    (B)    Section 21.02 (Continuous Sexual Abuse of Young Child or Children);

    (C)    Section 21.11 (Indecency With a Child);

evidence of a separate extraneous act may be admitted under Article 38.37, Section 2(b), are sexual offenses against children. Yet, Jacobs only sought to characterize them in a general manner as "sexual offenses." "Sexual offenses" would encompass a wide range of offenses, including those not involving children. Likewise, in his proposed questions, Jacobs did not seek to discuss the specifics of the State's enhancement paragraph. Rather, he only referred in his hypothetical to "an unrelated sexual offense." So long as their explanation is hypothetical and does not inform the jury panel of the specific allegations, both the State and the defendant are entitled to question the panel about the law applicable to the case. *See Hanson v. State*, 269 S.W.3d 130, 134 (Tex. App.—Amarillo 2008, no pet.) (approving the State's use of a display quoting Section 12.42 of the Penal Code, including its title, "Penalties for Repeat and Habitual Felony Offenders"). Because sexual offenses are the only type of offenses allowed to be admitted in the guilt/innocent phase of the trial under Article 38.37, Section 2(b), we find this a proper, and not too specific, characterization and find that Jacobs was entitled to question the jury panel about this law, which was critical to the case.

---

(D)   Section 22.011(a)(2) (Sexual Assault of a Child);

(E)   Sections 22.021(a)(1)(B) and (2) (Aggravated Sexual Assault of a Child);

(F)   Section 33.021 (Online Solicitation of a Minor);

(G)   Section 43.25 (Sexual Performance by a Child); or

(H)   Section 43.26 (Possession or Promotion of Child Pornography), Penal Code; or

(2)   an attempt or conspiracy to commit an offense described by Subdivision (1).

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1), (2) (West Supp. 2016).

14

The State also argues that allowing the use of "sexual offense" would be confusing to the jury. The State does not explain how the use of a proper characterization of the offenses allowed to be admitted by Article 38.37, Section 2(b), would be confusing to the jury.[10] We also fail to see how the use of "sexual offense" would be confusing.

Finally, the State argues that allowing the use of "sexual offense" would risk poisoning the jury panel. While this may be a valid concern, it must be balanced against the defendant's constitutional right to a fair trial by an impartial jury. Generally, evidence of extraneous offenses by the defendant would not be admissible in the guilt/innocence phase of the trial to prove his character and that he acted in accord with that character on a particular occasion. TEX. R. EVID. 404(a)(1); *Graves v. State*, 452 S.W.3d 907, 913 (Tex. App.—Texarkana 2014, pet. ref'd). So, in most cases, there is not a concern that an extraneous act would impact whether a juror would require the State to prove each element of the charged offense beyond a reasonable doubt. However, the Legislature has decided that evidence of extraneous acts described as certain sexual offenses against children may be admitted for that purpose in cases governed by Article 38.37, Section 2(b). This creates a legitimate concern on the part of the defendant that a juror may not require the State to prove each element of the charged offense beyond a reasonable doubt once he hears evidence of the extraneous act. Since it is only evidence of sexual offenses that are allowed to be admitted, the defendant has a right to voir dire the jury panel referring in a general manner

---

[10]The State does not contend, nor did the trial court find, that the questions were confusing.

to sexual offenses, which is a proper statement of the law applicable to the case.[11] *See Hanson*, 269 S.W.3d at 134.[12,13]

For these reasons, we find that Questions 1, 2, 4, and 5 included only those facts necessary to lead to a valid challenge for cause. Therefore, we find that these questions were proper commitment questions. *See Standefer*, 59 S.W.3d at 182–83. Since these questions, as proposed by Jacobs, were proper questions concerning a proper area of inquiry, we find that the trial court abused its discretion in barring Jacobs their use in his voir dire.

### 2. The Trial Court's Error Was Harmful

Not all instances in which the trial court limits the defendant's voir dire presentation are constitutional error. *Easley*, 424 S.W.3d at 541. In *Easley*, the Texas Court of Criminal Appeals overruled two of its prior cases to the extent they held that "erroneously limiting an accused's or

---

[11]This situation is distinguishable from those cases that are only concerned with voir dire regarding possible enhancement of punishment in exploring a potential juror's ability to consider the full range of punishment. *See, e.g.*, *Barnett v. State*, 344 S.W.3d 6, 20 (Tex. App—Texarkana 2011, pet. ref'd). Discussing the specifics of the enhancement paragraph has been held to be "the functional equivalent of reading to the jury panel the enhancement paragraph to the jury [sic]," which would be a violation of Article 36.01(a)(1) of the Code of Criminal Procedure. *Frausto v. State*, 642 S.W.2d 506, 508 (Tex. Crim. App. [Panel Op.] 1982); *see* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1) (West 2007).

[12]As we have discussed, a potential juror who would not require the State to prove each element of the charged offense beyond a reasonable doubt, if an unrelated sexual offense was proven, would be challengeable for cause.

[13]For these same reasons, we find that the trial court requiring Jacobs to refer to an unrelated "offense," "felony offense," or "assaultive offense," rather than "sexual offense," was unduly restrictive. First, this is an incorrect statement of the law, which only allows evidence of separate sexual offenses and infringes on Jacobs' right to question the jury panel on the law applicable to the case. In addition, there is a qualitative difference between referring to a generic offense, felony offense, or assaultive offense and referring to a sexual offense. A potential juror who may have no problem requiring the State to prove each element of the charged aggravated sexual assault of a child beyond a reasonable doubt if evidence of an unrelated theft or fight with a security officer is shown may not necessarily require the State to carry its burden of proof if evidence of an unrelated sexual offense is proven. Depriving Jacobs of the ability to determine whether a potential juror would not require the State to carry its burden of proof based on the law applicable to the case improperly restricts him from determining whether the potential juror has a bias against the law and is challengeable for cause. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (West 2006).

16

counsel's voir dire presentation is constitutional error because the limitation is a *per se* violation of the right to counsel." *Id.* at 537, 541.[14] However, the court also made it clear that "[t]here may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error subject to a Rule 44.2(a) harm analysis." *Id.*; *see* TEX. R. APP. P. 44.2(a). Therefore, under *Easley*, "the proper analysis is not to apply a per se rule to a voir dire error but to determine if the error is substantial enough to [be constitutional error] warrant[ing] a Rule 44.2(a) analysis; if not, then the error is reviewed under Rule 44.2(b)." *Hill*, 426 S.W.3d at 875.

If the error is nonconstitutional error, we disregard the error and affirm the judgment unless the appellant's substantial rights are affected. TEX. R. APP. P. 44.2(b); *Easley*, 424 S.W.3d at 542–43). If the error is constitutional error, we must reverse the judgment unless we "determine[] beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

In *Hill*, the defendant asked individual veniremembers a hypothetical question to determine whether they could consider the full range of punishment. When asked, juror number 27 answered that he could not consider the minimum sentence of fifteen years, and he was excused for cause. When the defendant attempted to ask the question to additional veniremembers, the State objected, and the trial court did not allow the defendant to ask the question to the remaining veniremembers. Ultimately, three veniremembers were seated on the jury who had never been asked a question to

---

[14]In the cases specifically overruled by *Easley*, the trial court limited only the individual questioning of veniremembers, and the questions only sought to determine if the defendant should use his peremptory challenges, not whether the veniremember could be challenged for cause. *Easley*, 424 S.W.2d at 537–38. Here, Jacobs was denied asking his questions to the entire jury panel and sought to determine if any of the veniremembers could be challenged for cause.

17

determine if they could consider the entire range of punishment. *Hill*, 426 S.W.3d at 876. In determining that this was a constitutional error, the Eastland Court of Appeals explained:

> Defense counsel is entitled to ask the veniremembers the question of whether they could consider the full range of punishment, and if the trial court prevents counsel from doing that, then defense counsel may not be able to discern if a juror should be struck for cause because he is unqualified. A veniremember is disqualified if he has prejudged the case or cannot follow the court's instructions. To have such an unqualified veniremember . . . on the jury is a violation of the defendant's right to an impartial jury. We find that the error in this case is a constitutional violation that requires a Rule 44.2(a) analysis.

*Id.* at 877 (citations omitted); *see also Hawkins v. State*, No. 12-13-00394-CR, 2015 WL 6166583, *9–10 (Tex. App.—Tyler Oct. 21, 2015, pet. ref'd) (mem. op., not designated for publication) (finding constitutional error when trial court refused to allow defendant to question jury panel about whether it could consider community supervision).

In this case, Jacobs was not allowed to question the jury panel about whether they would require the State to prove all the elements of the charged offense, or if it would find Jacobs guilty of the charged offense if the State only proved a lesser, uncharged offense. By preventing him from asking these questions of the jury panel, the trial court prevented him from determining if any potential juror(s) should be struck for cause. We agree with our sister courts of appeal that having an unqualified veniremember on the jury is a violation of the defendant's right to an impartial jury. Therefore, we find the error in this case is constitutional error that requires a Rule 44.2(a) analysis.[15]

---

[15]If the only disallowed questions were regarding the place and date of the offense, and the age of the victim at the time of the offense, we might not find that this was constitutional error since these could be established, at least in this case, with undisputed evidence. However, Question 4 addresses the fundamental issue of whether a potential juror would convict Jacobs of the charged offense if the State only proved a lesser, uncharged offense.

Next, we determine whether this error did not, beyond a reasonable doubt, contribute to the conviction. In our analysis, we "take into account any and every circumstance apparent in the record that logically informs [our] determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Snowden v. State*, 353 S.W.3d 815, 822 & n.31 (Tex. Crim. App. 2011) (citing TEX. R. APP. P. 44.2(a) and noting that "[t]here is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error").

In reviewing the record, we note that the State relied heavily on the unrelated sexual offense in its opening statement, in its case-in-chief, and in its final argument. The State began its opening statement with:

> Good morning. The evidence that you're going to hear in this case you will never forget the rest of you lives. Joshua Jacobs is a repeat offender, and the evidence you are going to hear is that he has been previously convicted in the State of Louisiana for a similar offense that brings us to Court today.

The State then described the anticipated testimony of the victim of the unrelated sexual offense in detail. The State focused on the unrelated sexual offense for almost half of its opening statement. In its case-in-chief, the first witness called by the State was the victim of the unrelated sexual offense. Also, in its closing argument, the State addressed the unrelated sexual offense both in its opening and rebuttal arguments. We also note that Jacobs' defensive theory was that although he may have touched Whiteman inappropriately, he was not guilty of aggravated sexual assault. In his opening and closing arguments, he stressed that there was no DNA evidence that he penetrated her sexual organ and that Whiteman's statements were inconsistent, and he argued that the evidence would show that he was only guilty of indecency with a child. In his cross-examination

19

of witnesses, Jacobs established that Whiteman initially did not accuse Jacobs of penetration and that she mentioned it in response to a question from the police. Additional cross-examination showed that Whiteman subsequently told the interviewer at the Children's Advocacy Center that Jacobs put his hands inside her shorts and only said his hand went into her privates when directly asked by the interviewer. At trial, Whiteman testified very briefly, and for the most part simply answering, "Yes" to the State's questions. Regarding the incident, Whiteman's entire testimony was to respond, "Yes" to two questions from the State: "[D]id [Jacobs] put his mouth on your chest?" and "[D]id he put his hands or his fingers in your private area?"

Considering the weight that the State placed on the unrelated sexual offense, the defensive theory that Jacobs was guilty only of indecency with a child, and the equivocal nature of Whiteman's statements and testimony regarding whether there was penetration, we cannot say beyond a reasonable doubt that the trial court's error did not contribute to Jacobs' conviction. Therefore, we sustain Jacobs' second point of error.

Jacobs has not challenged the sufficiency of the evidence supporting his conviction. Therefore, our sustaining Jacobs second point of error requires reversal of the trial court's judgment and remand of the cause for a new trial. In light of our ruling, we need not address Jacobs' first and third points of error.

We reverse the judgment of the trial court and remand this cause to the trial court for a new trial.

Bailey C. Moseley
Justice

Date Submitted:     October 6, 2016
Date Decided:      November 10, 2016

Publish

21