James Darrell HYDE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–141 CR

Court of Appeals of Texas,
Beaumont.

Jan. 19, 1994.

John C. Holleman, Livingston, for appellant.

Terry Brown, Dist. Atty., Livingston, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

### OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Aggravated Sexual Assault. Following their "Guilty" verdict, the jury assessed appellant's punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The jury also assessed a fine of $10,000. Appellant presents us with six points of error; none of which complain that the evidence was insufficient to sustain the conviction.

■ Appellant's first point of error asserts that, "The trial court committed reversible error by not allowing appellant's counsel to question the prospective jurors on whether

they could in a proper case return the minimum twenty-five year sentence." Appellant directs us to the following portion of his voir dire examination of the venire:

(Counsel for appellant) Just two more questions that I'm going to ask of you. And as Mr. Brown told you, the penalty range, if Mr. Hyde is found guilty, is a minimum of 25 years in the Texas Department of Corrections (sic) up to a sentence of 99 years or life and he can be fined up to, I think, $10,000. I might be corrected on the amount of the fine.

So, the penalty range for an individual who's found guilty of this offense if he has been to the penitentiary twice before, you found that was true also, is a minimum sentence of 25 years up to a maximum sentence of life.

I know those benches are hard, but let me just ask the question and take a little bit of time and ask the question to you. Can each and every one of you please promise me you'll ask this question to yourself? If you were a juror in an aggravated sexual assault case and have found the defendant guilty of that offense, then you jurors are going to be the one who will have to determine what the proper punishment is. And assuming that you found him guilty based upon the law, as Mr. Brown told you, and secondly that you found that it is true that the defendant you found guilty had been to the pen twice before, do you have an open mind as to the full range of punishment; as to a minimum of 25 years or to a maximum of 99 years or life?

Mr. Brown asked you as to the 99 years or life and told you he was going to be asking for a life sentence. And all of you said you could consider that in a proper case and return a life sentence, if I understood you correctly. Well, as you could well understand, I have to put the shoe on the other foot. The law says that we want jurors who have an open mind to the full range of punishment in that situation.

And the legislature says there are proper cases in that situation where a 25-year sentence should be returned, as there are proper situations where a life sentence

should be returned. My question to you is, do you have an open mind to the full range of punishment; and if you felt that it was proper, could you return a sentence of 25 years where you felt the defendant was guilty of the offense of aggravated sexual assault and had been to the penitentiary on two prior occasions? Do you understand my question?

THE COURT: Ladies and gentlemen, what you have to do is not guarantee this lawyer anything here. That's not a part of the way we play the ball game. What you have to be able to do is to consider, consider in your own mind—and you don't even have the facts yet—whether or not you could consider the minimum of 25 or the maximum of life. You're not to tell this man about any guarantee of what you'll do because you haven't heard the facts.

Does everyone understand that? You just have to be able to consider it. Now, find out if there's anybody that cannot consider it, not whether or not they'll give it or anything of that nature.

(Counsel for appellant): Judge, can I ask them if in a proper case they would determine in that situation—

THE COURT: You may ask them what you just asked them. You told them you can ask in a proper case. That's whether or not they can consider the entire range of punishment being the minimum of 25 up to a maximum of life. You don't have to commit one way or another. You have to be able to say that you can consider it.

(Counsel for appellant): Judge, I'm not asking them to commit that they would return 25 in this case, but I do think I am entitled to ask them whether or not they could in a proper case return a 25–year sentence.

THE COURT: No. You can ask them whether or not they can consider the maximum and the minimum. That's it, Counsel.

Appellant argues that since his punishment exposure was that of a habitual offender, the trial court erred in refusing to allow counsel to question the jury panel on "whether, in a proper case, they could return a sentence of twenty-five years." The longstanding rule is

that it is not error for the trial court to limit a party's voir dire examination when said party is attempting to commit prospective jurors as to what their verdict would be with regard to a particular fact situation. *Williams v. State,* 481 S.W.2d 119, 121 (Tex. Crim.App.1972); *Bailey v. State,* 838 S.W.2d 919, 921–922 (Tex.App.—Ft. Worth 1992, pet. ref'd); *Hilla v. State,* 832 S.W.2d 773, 776 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). In the instant case, the trial court gave a correct application of the law in question and correctly limited counsel's questioning to the proper area for voir dire purposes. Point of error one is overruled.

■ Appellant's second point of error states, "The trial court committed reversible error by allowing an investigating officer to testify that the complaining witness identified the appellant's photograph in a photo array thus thereby (sic) bolstering her testimony before she testified." As has been observed in several cases, "bolstering," by definition, occurs when one item of evidence is improperly used by a party to add credence or weight to some *earlier* unimpeached piece of relevant evidence offered by the same party. *Valcarcel v. State,* 765 S.W.2d 412, 415 (Tex.Crim.App.1989); *Livingston v. State,* 739 S.W.2d 311, 332 (Tex.Crim.App. 1987), *cert denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *McKay v. State,* 707 S.W.2d 23, 33 (Tex.Crim.App.), *cert denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). We have held that improper "bolstering" does not occur when the alleged "bolstering" takes place *before* the unimpeached witness has had a chance to testify. *Williams v. State,* 798 S.W.2d 368, 370 (Tex.App.—Beaumont 1990, no pet.).

With the handing down of *Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993), the Court of Criminal Appeals has, for all intents and purposes, done away with the concept of "bolstering" as a viable tool for use in objecting to certain types of evidence. In another attempt by the Court to remind practitioners of the existence of the Texas Rules of Criminal Evidence, the Court states:

> "Bolstering" may perhaps be understood a little more precisely to be any evidence the *sole* purpose of which is to convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing "to make the existence of [a] fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." See Rule (of Criminal Evidence) 401, supra. Accordingly, evidence that corroborates another witness' story or enhances inferences to be drawn from another source of evidence, in the sense that it has an incrementally *further* tendency to establish a fact of consequence, should not be considered "bolstering."

*Cohn,* 849 S.W.2d at 819–820.

In the instant case, mistaken identity of appellant as the perpetrator of the sexual assault was the basis of appellant's defense. Appellant's counsel began to raise reasonable doubt as to appellant's involvement during cross-examination of the State's first two witnesses, the officers with whom the victim first had contact moments after the sexual assault. James Michael Farrar, the Livingston Police investigator who prepared the photographic line-up and presented it to the victim, was the fourth witness called by the State. At that point, any testimony with regard to the identity of the perpetrator of the sexual assault was relevant under TEX. R.CRIM.EVID. 401. Therefore, under the standards announced in *Cohn,* there was no error in permitting Officer Farrar's testimony of the victim's choice of appellant's picture in the photographic line-up as being the perpetrator of the sexual assault. Point of error two is overruled.

Appellant's third point of error claims as its authoritative bases the Fourth Amendment of the United States Constitution, TEX. CONST. art. I, sec. 9, and TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon Supp.1993). Appellant argues that none of the items taken from appellant's person or from appellant's vehicle were admissible as both appellant and the vehicle were unlawfully seized without a warrant, and no exceptions to the warrant requirement were met. The facts surrounding appellant's detention began at approximately 5:10 a.m. on the morning of August 7, 1990. Officer Bobby Williamson of

the Livingston Police Department and Deputy Mark Hamilton of the Polk County Sheriff's Department were conversing in the parking lot of the Whataburger restaurant when a woman, later identified as the victim, drove up in her pickup truck. She was described in subsequent testimony by both officers as "fairly hysterical, ..., screaming, incoherent[,] .., frantic, extremely scared; crying." The victim managed to relate that she was choked or strangled by a white male in the parking lot of the local post office. Officer Williamson testified that he observed fresh marks on the victim's neck which indicated to him that someone had indeed tried to choke her. Seconds later as the victim was gesturing toward the highway, she screamed, "There he goes," or "That's him." Officer Williamson noted that a white male was operating the suspect vehicle, a dark colored, four-door compact car. The officers immediately entered their respective patrol units and gave chase. Officer Williamson pursued the vehicle south on Highway 59. Deputy Hamilton exited the Whataburger parking area and drove west on Highway 190 as that was the direction he last saw the suspect vehicle travelling.

Officer Williamson quickly caught up to the suspect vehicle. The suspect vehicle, with appellant at the wheel, pulled over to the side of the highway before Officer Williamson turned on the overhead emergency lights on his patrol unit. At that point, Officer Williamson ordered appellant from the vehicle, had appellant lay on the ground, and proceeded to handcuff appellant. Deputy Hamilton arrived shortly thereafter and took custody of appellant in order to take appellant back to the Whataburger parking lot for a positive identification show-up with the victim.

At the Whataburger parking lot, apparently because of feelings of extreme fear and intimidation, the victim refused to look at the appellant and make a facial identification. Deputy Hamilton did acknowledge that the victim stated that her assailant had sexually assaulted her in the post office parking lot. Further direct examination of Deputy Hamilton is contained in the statement of facts before us as follows:

Q. (the State) Well, was she able to come over and view the defendant?

A. (Hamilton) No, sir. She wouldn't get out of the vehicle.

Q. Did she say anything at that time as to why she couldn't?

A. She stated she was too scared to get out of the vehicle.

Q. Had you gotten a description from her at all of her assailant?

A. Yes, sir. We had a brief description.

Q. What was the description she gave?

A. Young white male. She gave me some clothing description, but I can't recall exactly what it was at this time.

Q. Would you recall what the defendant was wearing at the time you arrested him?

A. I remember—I can't recall, sir.

Q. Would you recall if the description that she gave you of the clothing that he wore, did that match?

A. Yes, sir; at the time, it did.

Q. Let me finish. Do you recall if the description she gave you of her assailant, did that match the description of the clothing that the defendant was wearing?

A. Yes, sir, it did.

Before beginning our discussion of the applicable law on this issue, we wish to note that neither appellant's original brief nor his supplemental brief make any attempt to provide separate arguments and authorities for the alleged unlawful seizures under the United States and Texas Constitutions. *See, Heitman v. State,* 815 S.W.2d 681, 690–691 (Tex.Crim.App.1991). As we appreciate his argument, it is grounded on the sole contention that art. 38.23 [1] was violated and, as a result of said violation, none of the evidence taken from appellant's person or his vehicle was admissible at trial because appellant's arrest violated the warrantless arrest provi-

---

**1.** The applicable provision of art. 38.23 provides:
(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

sions of Chapter 14 of the Texas Code of Criminal Procedure. Because the cited constitutional protections were not separately argued or annotated, we decline to address them.

With regard to the alleged violation of Tex.Crim.Proc.Code Ann. § 38.23 (Vernon Supp.1993), the record reflects that the physical evidence seized from inside appellant's vehicle was obtained via a search warrant. Hair, blood, and saliva samples taken from appellant's person were also obtained at the direction of a search warrant. The record before us reflects that the only items "seized" from appellant without benefit of a warrant were the clothing appellant was wearing the night he was taken into custody.

■ We have no doubt that at the point he was ordered from his vehicle, ordered to lay down on the ground, and handcuffed by Officer Williamson, appellant was under arrest. *See, Amores v. State,* 816 S.W.2d 407 (Tex. Crim.App.1991). The State's contention that this was merely an "investigative detention" based upon *Terry v. Ohio* [2] is misplaced. Under *Terry,* warrantless detentions by police on less than probable cause are limited to brief questioning of suspicious persons with respect to identity, reason for being in the area, or other such reasonable inquiries of a truly investigative nature. Having found a warrantless arrest of appellant, we must next determine whether said arrest was supported by probable cause.

■ "Probable cause" exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Amores,* 816 S.W.2d at 413. Based upon the facts known to both officers, we find probable cause existed to support appellant's arrest. For purposes of art. 38.23, however, appellant argues that the specifics of Tex.Code Crim.Proc.Ann. art. 14.04 (Vernon 1977) authorize warrantless arrests *only* "[w]here it

is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape...." [3] The credibility of the victim and the ability of the appellant to effect an escape if permitted free access to his vehicle cannot be seriously doubted from the testimony in the record before us. Appellant, for all intents and purposes, hinges his theory of unlawful arrest on the fact that neither officer specifically mentioned a particular felony offense while testifying as to the bases for the arrest. Candidly, Officer Williamson stated, "I thought I had possibly attempted kidnapping; at the very least an assault." Appellant is right in pointing out that the offenses of Attempted Kidnapping and Assault (without evidence of serious bodily injury or the perpetrator's use of a deadly weapon) are misdemeanors. The record reflects, however, that only moments after returning appellant to the victim's location in the restaurant parking lot, Deputy Hamilton learned from the victim that a felony had indeed occurred, a sexual assault. Furthermore, appellant's identification as the perpetrator ripened, for probable cause purposes, as the clothing description of the assailant matched the clothes appellant was wearing, including the rather distinctive cut-off "muscle" shirt with the writing on the front.

As we have noted before, art. 38.23 has, as its primary purpose, the deterrence of police activity which could not have been reasonably believed to be lawful by the officers committing same. *Reed v. State,* 818 S.W.2d 569, 571 (Tex.App.—Beaumont 1991, pet. ref'd). We can see no deterrence to future unlawful police activity by finding that the actions of Officer Williamson and Deputy Hamilton were unreasonable, and were a violation of art. 14.04 where the record before us reflects that the officers had to react instantaneously to the events quickly unfolding before them. We find, therefore, that appellant's arrest did not violate the provisions of art. 14.04. Without said statutory violation, art. 38.23 is not implicated. The

---

**2.** 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**3.** The term "satisfactory proof" has been held to be the equivalent to "probable cause." *Earley v. State,* 635 S.W.2d 528, 531 (Tex.Crim.App.1982).

trial court did not err in admitting evidence. Point of error three is overruled.

■ We will combine our discussion of point of error four with that of point of error six. They each provide as follows:

Point of error four: The trial court committed reversible error by allowing objects removed from the vehicle and tests performed on those objects admitted into evidence because the affidavit for search warrant did not provide probable cause for issuance of the search warrant.

Point of error six: The trial court committed reversible error by allowing the results of tests performed on the appellant's blood because the blood was obtained pursuant to a search warrant which was not based upon probable cause.

We note at the outset that both points of error contain identical arguments and authorities. Both points of error can also be condensed to the following complaint:

The affidavit [in support of the issuance of the search warrants] does not show from whom affiant received his information. Therefore it does not give the detached magistrate anyway (sic) to effectively determine the credibility of the provider. The affidavit simply provides conclusionary (sic) statements without showing who provided the information, or why it should be credible.... This affidavit simply does not give sufficient information so a magistrate can find probable cause.

■ In determining the sufficiency of an affidavit for an arrest or search warrant, a reviewing court is limited to the "four corners of an affidavit." *Jones v. State*, 833 S.W.2d 118, 123 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 1285, 122 L.Ed.2d 678 (1993). *Jones*, quoting from a variety of sources, provides further guidance as follows:

This determination, however, is not meant "to place legalistic blinders on the process wherein a neutral and detached magistrate must decide whether there are sufficient facts stated to validate issuance of a prop-

er warrant." Rather, this Court has concluded that warrant affidavits should be interpreted in a common sense and realistic manner and the reviewing magistrate is permitted to draw reasonable inferences.

833 S.W.2d at 123–124.

In the instant case, appellant's allegation that neither affidavit provides from whom the affiant, Investigator J.M. Farrar of the Livingston Police Department, received his information is patently false. Both affidavits list the names, "Officer Bobby Williamson of the City of Livingston Police Department," and "Jane Doe"[4] as the sources for the information contained therein. A further examination of the affidavits indicate probable cause for the issuance of the respective search warrants. The identity issue was satisfied by the identification of the perpetrator's clothing as discussed previously. The affidavit for the vehicle search warrant set out the fact that the victim informed the officer that the sexual assault occurred inside the vehicle and items of her clothing could still be found in the vehicle, with said items also being observed by Officer Williamson. The hair, blood, and saliva affidavit stated, in addition to the above information, that a rape kit "was performed on Jane Doe," which included blood and hair samples taken from the victim. Rape kits contain, *inter alia*, swabs taken from the victim's mouth, vagina, and anus in order to test for the presence of semen. Read in a common sense manner, we find both affidavits provide sufficient information for any neutral and detached magistrate to have issued the respective search warrants. Points of error four and six are overruled.

■ Point of error five avers, "The trial court committed reversible error by not excising the false information contained in the affidavit for search warrant and not excluding evidence obtained from the vehicle through the execution of the search warrant." This complaint encompasses only the vehicle affidavit. Appellant argues that language contained in the affidavit "leaves the

---

4. This obvious pseudonym was used apparently in compliance with Chapter 57 of the Texas Code of Criminal Procedure.

667

false impression that the complaining witness identified Appellant as the individual who sexually assaulted her." We reiterate that while the record indeed reflects that the victim did not make a *facial* identification of appellant as her assailant, the victim's recognition of appellant's vehicle coupled with the victim's description of the somewhat distinctive clothing her assailant was wearing at the time of the attack, said clothing matching that which appellant was wearing when arrested, combined to establish probable cause that appellant was the assailant. Therefore, identification of appellant as the perpetrator of the offense was accomplished by the victim following appellant's arrival at the Whataburger parking lot. The statement in the affidavit is not false; the police were made aware of the sexual assault when appellant was "transported back to Jane Doe's location." No error was committed by the trial court in refusing to excise any portion of the affidavit. Point of error five is overruled, and the judgment and sentence of the trial court are affirmed.

AFFIRMED.