**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

_____

No. 98-40666

_____

DONNA ESTER MARIE MANNING; ET AL,

Plaintiffs,

DONNA ESTER MARIE MANNING,

Plaintiff-Appellant,

versus

HARRISON COUNTY, Texas;  ET AL,

Defendants.

HARRISON COUNTY, Texas;  CHRIS DOTSON;  BALDEMAR
"BALDY" OLIVARES, JR.,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas
(2:97-CV-40)

June 9, 1999

Before EMILIO M. GARZA, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant, Donna Manning, appeals the district court's grant of summary judgment

in favor of Defendants-Appellees Harrison County, Texas; Deputy Chris Dotson; and Deputy

Baldemar "Baldy" Olivares.  We affirm.

I

Phyllis Oliver, Ayrika Bennett and Lorenzo White were traveling in Oliver's car, a late model

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

white Chrysler New Yorker, when White pulled out a pistol and threatened to kill both Oliver and Bennett. Bennett jumped from the car and ran for safety. White shot Oliver in the head, and then unsuccessfully attempted to shoot Bennett as she ran away. Oliver subsequently escaped from her car and reached the interstate highway, where she was struck by a car.

Bennett obtained help from a passing motorist, who took her to a local store to call 911. The motorist then drove Bennett back on the interstate to where Oliver lay on the side of the road. By this time police officers had arrived at the scene and were assisting Oliver. Before the officers could get a complete description of White from Bennett, a late model white Chrysler New Yorker drove by, and Bennett told the officers that the car that had passed was Oliver's. According to a witness affidavit, Bennett told the officers "that was the man, that's the car, that's him." According to the affidavit of Deputy Dotson, Oliver also screamed "that is my car right there." The officers at the scene pursued the car and pulled it over shortly thereafter.

After stopping the car, the officers drew their weapons and ordered the occupants, James and Donna Manning (collectively "the Mannings"), to get out of the car and to lie on the ground. The officers then handcuffed the Mannings. One of the officers retrieved James Manning's wallet and checked for identification. Discovering that James Manning was not the suspect—that is, realizing that he was not White—the officers immediately removed the handcuffs and released the Mannings. Deputy Dotson estimated that the stop lasted for no more than ten minutes.

Donna and James Manning brought suit against Harrison County, Texas; Deputies Dotson and Olivares; and several other officers. The Mannings claimed that they were subjected to an unlawful warrantless arrest and an objectively unreasonable search and seizure in violation of their Fourth Amendment rights. The Mannings further alleged that deficient policies, procedures, practices and customs of Harrison County, Texas, proximately caused the unconstitutional conduct. The defendants moved for summary judgment. They asserted that the individual officers were entitled to qualified immunity, and claimed that Harrison County has no policy, custom or practice of violating the rights of its citizens.

The district court granted the defendants' motion for summary judgment. It held that the officers had probable cause to arrest the Mannings, and therefore, the Mannings were not subject to an unlawful arrest. The district court also held that the officers did not use excessive force. Having decided that the officers did not engage in any unlawful conduct, the district court concluded that the claims against Harrison County could not stand. Donna Manning timely appealed.

II

We review the district court's grant of summary judgment *de novo*. *See Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). To establish that the defendants are not entitled to qualified immunity, Manning must show (1) that she has asserted a violation of a constitutional right; (2) that this right was clearly established; and (3) that the officers' actions were objectively unreasonable. *See, e.g., Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

After reviewing the record and the briefs filed on appeal, we agree with the district court that the officers had probable cause to arrest Donna Manning.[1] Both Bennett and Oliver identified the Mannings' car as the one involved in the shooting and did not mention whether other people were in the car. Although Oliver and Bennett told the officers that their assailant was Lorenzo White, the officers did not know whether other individuals were also involved in the shooting. The officers had to react "instantaneously to the events quickly unfolding before them." *Hyde v. State*, 869 S.W.2d 660, 665 (Tex. App.—Beaumont 1994, writ ref'd) (finding probable cause for officers to arrest appellant where the victim pointed to the appellant and screamed "That's him"). Thus, at the moment of the arrest, "the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [both

---

[1] Harrison County and the other appellees contend that the stop of Donna Manning constituted a detention and not an arrest, and thus "should be viewed within the framework of a *Terry* stop." We find that, on the facts of this case, the officers had probable cause to effect an arrest. Accordingly, we need not decide whether the stop constituted an arrest or merely a detention.

James and Donna Manning] had committed . . . an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225, 13 L. Ed. 2d 142, __ (1964).

We also agree with the district court that the officers did not use excessive force when they arrested Donna Manning. Manning contends that when the officers ordered her out of the car, Dotson threatened to shoot her if she did not open her car door from the outside. According to Manning, her car door was locked and therefore it was impossible to comply with Dotson's command. She also contends that Deputy Olivares put her in a bed of fire ants when he put her in handcuffs. Finally, she argues that the duration of the stop was unnecessary, stating that the stop "felt like [it lasted] forever."

To prove her excessive force claim, Manning must show that (1) her injury resulted directly and only from the use of force that was clearly excessive to the need; and (2) the excessive use of force was objectively unreasonable. *See Peta v. Rivera*, 143 F.3d 895, 908 (5th Cir. 1998). Manning has not proven all of these elements. The record shows that the officers had trustworthy information that the occupants of the vehicle were armed, and that the officers acted reasonably in light of this information. *See Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443, __ (1989) (noting that "the test of reasonableness under t he Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, [and] whether the suspect poses an immediate threat to the safety of the officers or others . . ."). Additionally, there is no evidence that Olivares directed Manning to lie in a bed of fire ants. The record, in fact, shows that as soon as Olivares became aware that Donna Manning had fire ants on her, he helped Manning to her feet and brushed off the ants. Finally, the objective facts in the record indicate that the stop lasted only ten minutes, and ten minutes does not constitute an excessive amount of time under the circumstances.

III

We hold that the defendants did not violate Donna Manning's Fourth Amendment rights.

Accordingly, we AFFIRM the district court's summary judgment.