YVONNE T. RODRIGUEZ, Justice
Francisco Quezada appeals his conviction for intentionally or knowingly causing serious bodily injury to a child younger than fifteen. In his first issue, Appellant asserts that the trial court erred in denying his counsel the opportunity to question the venire on probation during his voir dire presentation even though he was eligible for probation. He also contends the evidence was insufficient to sustain his conviction as alleged in the indictment. Finding Appellant's first issue meritorious, we affirm the judgment of the trial court as to the conviction but reverse and remand for a new hearing insofar as it relates to punishment.
BACKGROUND
This case presents a question regarding a defendant's right to voir dire on the possible punishment range he may face when he has elected to have the jury determine sentencing. Appellant, Francisco Quezada, was charged with intentionally or knowingly causing serious bodily injury to a child younger than fifteen by allegedly submerging the child's hands into hot liquid. The child, C.W.,[1] was four-years-old at the time of the injury. C.W.'s mother, Neila Wilson, had been dating Appellant for three years and would let him stay at her home and watch C.W. while she was at work. Wilson testified that on the day of the injury she had gone to work around 7:30 in the morning and left C.W. in Appellant's care. A few hours later, Wilson received a message from Appellant that C.W. had hurt himself. When Appellant sent her pictures of the skin peeling off of the child's hands, Wilson raced home to find C.W. crying and Appellant in an excited state. Appellant told her he had made sandwiches for himself and C.W. and retired to the bedroom to watch television; shortly thereafter, he said he heard C.W. scream and found him in the bathroom with the burns on his hands. Appellant repeatedly stated he did not know what had caused C.W.'s injuries. The three *540 quickly left the trailer for a medical clinic nearby, and medical professionals there told Wilson that because of the severity of the burns they would need to go to the El Paso Children's Hospital. When they arrived at the children's hospital, they were told that C.W. would need to be flown to the burn center in Lubbock, so he and his mother flew there and he was ultimately treated there. Appellant was later charged with causing the injuries.
Prior to Appellant's trial, the trial judge exercised his discretion in criminal cases to order an Article 28.01[2] pretrial hearing. Appellant made several motions at the hearing, including his election to have punishment assessed by the jury, but did not submit an application for probation.[3] On the first day of trial, when the venire was present but before questioning had begun, Defense Counsel attempted to submit an application for probation to the court clerk but she refused it and instructed counsel to take the matter up with the trial judge. Moments later, Defense Counsel requested to approach the bench but was interrupted by the trial judge, who, ignoring the request, began the opening address to the venire. No further mention was made of the application until a few minutes into the State's voir dire. As the State began to discuss punishment with the jury, the trial judge asked the attorneys to approach the bench. The following exchange occurred:
THE COURT: It's been brought to my attention that there's no application for probation in this case.
DEFENSE COUNSEL #1: You filed the application.
DEFENSE COUNSEL #2: We have it.
DEFENSE COUNSEL #1: We filed it, Judge.
THE COURT: Show it to me.
DEFENSE COUNSEL #1: I was trying to file it when she showed up, and she told me to approach you. And you said stop, so I didn't.
THE COURT: We can't stop the voir dire.
DEFENSE COUNSEL #1: So I have it, but it's been filed.
PROSECUTOR #1: He's eligible.
THE COURT: No, he's not. You've got to file an application.
DEFENSE COUNSEL #1: File the application-I was trying to bring it to your attention.
PROSECUTOR #1: Filed with their motion to continue-I thought one was filed with their motion to continue.
THE COURT: It's not filed. There is no application for probation.
DEFENSE COUNSEL #1: That's why I approached you.
THE COURT: That's not my job. You filed it.
PROSECUTOR #1: So you're telling me that at this point, he's not?
THE COURT: How are you going to voir dire on probation?
PROSECUTOR #1: Right, Judge. I believed that to be the range of punishment.
THE COURT: You are correct. Go ahead.
DEFENSE COUNSEL #1: So are you going to permit me? Because I tried to give it to her, and she wouldn't accept it.
THE COURT: It doesn't matter what you tried to do. All I'm telling you is that she is saying-I'm not arguing with you.
DEFENSE COUNSEL #1: So- *541 PROSECUTOR #1: Am I-do I have to voir dire on probation?
THE COURT: There is not an application for probation.
PROSECUTOR #2: They have one that's written up, just not filed.
THE COURT: I don't care what you think.
DEFENSE COUNSEL #1: Well, then, I need-
THE COURT: Mr. Prieto, would you clear the bench?
THE BAILIFF: Have a seat.
Defense Counsels for Appellant returned to their seats and the State continued its voir dire. The State informed the venire that the punishment range was five-to-ninety-nine years or life, but then stated, "[n]ow to fully consider the full range of punishment ..." and was immediately called to the bench by the trial judge. The record reflects the following exchange occurred during the bench conference:
THE COURT: Did you hear what I said?
PROSECUTOR #1: I'm not going to do it.
THE COURT: Nothing to do with probation. You come to me or-
PROSECUTOR #1: He filed an application for jury.
THE COURT: But you're not going to probation.
PROSECUTOR #1: No, I'm not doing probation. I'm not doing probation. I understand you perfectly, Judge.
THE COURT: Please continue.
DEFENSE COUNSEL #1: I want to make a bill on this, Your Honor.
THE COURT: Go back to your seat, [Defense Counsel], right now.
(Bench discussion concluded.)
DEFENSE COUNSEL #1: Was that on the record, Your Honor?
The State continued its voir dire, informing the venire the minimum punishment upon conviction was five years. Defense Counsel then began voir dire, having several one-on-one discussions with venire members. After describing the punishment range according to the trial court's instructions, Defense Counsel stated "[o]ne of the other options that the jury has is probation." Defense Counsel was immediately called to the bench by the trial judge, where another exchange on venire questions about probation took place:
THE COURT: I'm going to repeat this one time and one time only, and somebody's going to be held in contempt. There's no application for probation. You cannot voir dire on probation. The next one who does will be held in contempt.
DEFENSE COUNSEL #1: So would the Court permit me to make-
THE COURT: Absolutely. Absolutely. But not right now.
DEFENSE COUNSEL #1: I won't.
Defense Counsel concluded his voir dire without questioning the venire members on the issue of whether they could consider probation. After both sides exercised their strikes, the court allowed Defense Counsel to make a bill of exceptions. Defense Counsel called the court clerk to testify on his attempt to submit the probation application to the clerk. She related that counsel had attempted to hand her the application for probation as she was walking in-just prior to jury selection-but that she refused it because she understood the application was to have been submitted at the Article 28.01 conference. She directed counsel to take the matter up with the trial court because she was busy going over the venire absences.
In completing his bill, Defense Counsel stated he had discussed the issue with the State and State was not opposed to allowing *542 his application to be considered filed before trial. The State voiced agreement, but emphasized the decision was up to the trial judge. The trial judge denied the request, but allowed the application to be submitted solely for the record. The trial proceeded, and the jury heard arguments and evidence from the State and Appellant. The record reflects the trial court received and accepted a probation application for Appellant sometime after the defense rested its case-in-chief in the guilt or innocence phase. After deliberations, the jury found Appellant guilty as charged and the trial proceeded to the punishment phase. During closing arguments, without objection from the State or admonishment from the trial judge, Defense Counsel discussed probation several times and asked the jury to give Appellant probation. In its closing, the State urged the jury to give Appellant time in prison instead of probation, arguing that probation would not do justice in this case. The trial judge also included an instruction on probation in its charge to the jury. The jury deliberated, and ultimately assessed punishment at ten-years' imprisonment and a $10,000 fine. This appeal followed.
DISCUSSION
In two issues, Appellant asserts that: (1) the trial court reversibly erred in prohibiting defense counsel from questioning whether the venire could consider probation in the punishment phase; and (2) the evidence was insufficient to sustain the conviction as alleged in the indictment. We address each issue in turn.
Voir Dire
Standard of Review
The trial court is given wide discretion over the jury selection process and may impose reasonable limits on the questions asked by counsel. Sells v. State , 121 S.W.3d 748, 756 (Tex. Crim. App. 2003). The trial court may determine the propriety of particular questions, and its decision will not be disturbed absent an abuse of discretion. Id. A trial court abuses its discretion only when it disallows a proper question about a proper area of inquiry; "[a] question is proper if it seeks to discover a juror's views on an issue applicable to the case." Barajas v. State , 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).
Analysis
As a preliminary matter, we must determine whether this error was properly preserved for our review. To preserve error on improper restraint of voir dire questions, Appellant must demonstrate that he was prevented from asking particular questions that were proper. Sells , 121 S.W.3d at 756. "That the trial court generally disapproved of an area of inquiry from which proper questions could have been formulated is not enough because the trial court might have allowed the proper question had it been submitted for the court's consideration." Id. The purpose of the rule, among other good considerations, is to ensure that the trial court is on notice as to the specific question the party wanted to ask and can thus make an intelligent ruling on the issue. Sells , 121 S.W.3d at 756 ; Franklin v. State, 12 S.W.3d 473, 477 (Tex. Crim. App. 2000) ; See also TEX.R.APP.P. 33.1. It is a proper area of inquiry on voir dire to question potential jurors on whether they could give a specific sentence. Hyde v. State , 869 S.W.2d 660, 662-63 (Tex.App.-Beaumont 1994, pet. ref'd) ; see also Mathis v. State , 576 S.W.2d 835, 838 (Tex. Crim. App. 1979) (holding that the trial court cannot prevent counsel from discussing the punishment range even where the trial court had previously told the jury it must consider the full punishment range).
*543 Here, the trial judge strongly admonished attorneys for the State and Appellant that questions on probation would not be permitted because of the failure to file the probation application at the Article 28.01 conference. Defense Counsel protested he had properly attempted to file the application but was thwarted by the court clerk and by the trial judge's refusal to accept the application. Further, Defense Counsel attempted to question the venire regarding probation during his voir dire, but was immediately cut off by the trial judge and warned he would be held in contempt if he attempted to voir dire on probation again. Defense Counsel also created a bill of exceptions on whether the application for probation was improperly rejected. Despite the lack of a fully developed question by Defense Counsel, there is little question that the trial judge was aware that Defense Counsel wanted to question the venire regarding probation and disallowed any voir dire on it. This was made clear by the trial judge's direct order not to question the venire on the issue and its threat to hold Defense Counsel in contempt if he mentioned it at all. Because Defense Counsel attempted to question the venire on probation but was told categorically he could not discuss probation, and because he created a bill of exceptions, the requirement of a specific question is unnecessary here; the trial judge was on notice Defense Counsel was attempting to question the venire regarding the possibility of probation if they found him guilty and prevented Defense Counsel from doing so regardless of how the question was formulated. Sells , 121 S.W.3d at 756 ; Franklin, 12 S.W.3d at 477. Accordingly, the issue of whether Appellant was entitled to question the venire regarding the full range of punishment, including probation, was properly preserved for our review.
In determining whether Appellant was improperly restricted, we look to the Texas Code of Criminal Procedure's timing requirements for filing an application for probation. Appellant urges us to focus on the language in Article 42.12 of the code, which at the time of the proceeding below read as follows:
(e) A defendant is eligible for community supervision under this section only if before the trial begins the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury enters in the verdict a finding that the information in the defendant's motion is true.[4] [Emphasis added].
Appellant argues this rule makes filing an application for probation proper provided it is filed any time before trial. But Appellant's position is complicated by Article 28.01 of the code, which authorizes a trial court to hold a pretrial hearing and mandates a defendant raise all preliminary matters at the hearing if the trial court exercises its discretion to hold one. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1 (West 2006). Any preliminary matters not raised or filed seven days before the hearing cannot be later raised or filed except by permission of the trial court for good cause shown. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 2. Preliminary matters include all pleadings of the defendant, and Article 27.02 defines pleadings of a defendant to include an application for probation. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 1 ; TEX.CODE CRIM.PROC.ANN. art. 27.02 (West 2006).
*544 Although a case directly on point was not found, similar cases involving Article 28.01 hearings have upheld reasonable procedural requirements on how a defendant may assert certain rights. Gutierrez v. State , 979 S.W.2d 659, 664 (Tex. Crim. App. 1998) (Keller, J., concurring opin.)(relying on Michel v. Louisiana , 350 U.S. 91, 97-98, 76 S.Ct. 158, 100 L.Ed. 83 (1955) ); see Blankenship v. State , 448 S.W.2d 476, 478 (Tex. Crim. App. 1969) (it was not error for the trial court to refuse to hear defendant's pretrial motions to suppress filed three days before trial when an Article 28.01 hearing had already taken place); but see Revia v. State , 649 S.W.2d 625, 626 (Tex. Crim. App. 1983) (trial court denied defendant's motion to change venue because it was not raised at the Article 28.01 hearing, but the Court of Criminal Appeals reversed, holding Article 28.01 cannot bar consideration of a change of venue motion because it is a question of constitutional dimension).
Here, Appellant did not file his application for probation at the Article 28.01 hearing; accordingly, the statute appears to bar it from being raised or filed at trial except by permission of the trial court for good cause shown. TEX.CODE CRIM.PROC.ANN. art. 28.01, § 2. It is apparent from the record the trial judge initially did not allow the application to be filed, and subsequently disallowed questioning on the full range of punishment during voir dire. Had that been the end of the matter, the statute would seem to require affirmance of the trial court's actions. But during the guilt or innocence phase, the trial court reversed its decision and allowed Appellant to submit the probation application and the jury was ultimately charged on probation. A trial court can allow an untimely filing for good cause shown, as noted above, and when a trial court addresses the merits of an untimely filing it functionally waives the defendant's noncompliance with Article 28.01. Miller v. State , 866 S.W.2d 243, 245-46 (Tex. Crim. App. 1993) ( Article 28.01 timeliness issue was waived by trial court overruling the untimely motion on the merits). Because the trial court allowed the application to be filed and subsequently charged the jury on probation, the timeliness issue of the probation application was waived.
Thus, the issue then becomes whether the sentencing jury was properly questioned if they could fairly consider the full range of punishment, including probation, if Appellant was found guilty of causing serious bodily injury to a child.
The Texas Constitution guarantees the right of the accused to "a speedy public trial by an impartial jury." TEX.CONST. art. I, § 10. Both the State and the defendant have the right to question venire members to expose any interest or partiality in order to use peremptory strikes intelligently. Franklin , 12 S.W.3d at 477, citing Florio v. State , 568 S.W.2d 132, 133 (Tex. Crim. App. 1978). "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." Barajas , 93 S.W.3d at 38-39 (citing Smith v. State , 703 S.W.2d 641, 643 (Tex. Crim. App. 1985) ). An issue applicable to the case includes attempts to discover grounds for a challenge for cause or questions posed for the purpose of intelligently exercising peremptory challenges. Barajas , 93 S.W.3d at 39. Whether a venire member could consider a specific sentence is a proper question on voir dire. Hyde , 869 S.W.2d at 662-63. Any potential juror who "has a bias or prejudice against any of the law applicable to the case" may be challenged for cause. TEX.CODE CRIM.PROC.ANN. art. 35.16(c)(2) (West 2006). If counsel is unable to determine such material information, the defendant is unable to exercise his challenges and peremptory strikes intelligently *545 and his ability to select an impartial jury is hindered. See Rivers v. State , No. 08-12-00145-CR, 2014 WL 3662569, at *3 (Tex.App.-El Paso July 23, 2014, pet. ref'd) (citing Salazar v. State , 562 S.W.2d 480, 482 (Tex. Crim. App. 1978)).
Here, Appellant was eligible for probation, an application for probation was filed with the trial court, and the jury was instructed on probation. Appellant was entitled to question the venire regarding the full range of punishment in order to exercise his strikes intelligently and ensure the jury could fairly consider probation, just as in a capital case the state is entitled to question and strike venire members who cannot consider the death penalty. Fuller v. State , 827 S.W.2d 919, 924 (Tex. Crim. App. 1992) ("The proper standard to be used in disqualifying a prospective juror in death penalty cases is whether that juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath."); Wilhelm v. State , 426 S.W.2d 850, 854 (Tex. Crim. App. 1968) (no error in granting state's challenge for cause against juror who expressed conscientious scruples against infliction of death penalty). Based on the unusual facts of this case, we find that the trial court abused its discretion in denying Appellant the opportunity to voir dire on the full range of punishment.
Having found error, we must determine whether there was sufficient harm to warrant reversal. Rule 44.2 of the Texas Rules of Appellate Procedure provides two standards under which to determine harm depending upon the nature of the error:
(a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
TEX.R.APP.P. 44.2. The Court of Criminal Appeals has recently held that not all instances of improperly limiting defense counsel's voir dire is constitutional error. Easley v. State , 424 S.W.3d 535, 541 (Tex. Crim. App. 2014). In Easley , the trial judge presiding over defendant's case prohibited counsel from contrasting the different standards of proof with the beyond-a-reasonable-doubt standard during his voir dire. Id. , at 536. In overruling its prior precedent, the Court of Criminal Appeals held that the right to counsel-as found in the "right to be heard" language of Article I, section 10 of the Texas Constitution -was not necessarily violated by impediments imposed on counsel's ability to use peremptory challenges. Id. , at 538. The Court had previously held that the use of peremptory challenges was so integral that any impediment on counsel's ability to use them would violate a defendant's right to counsel. Id. But the Court was concerned this line of reasoning would imply that any error in which a defendant is restricted in some way could be construed as constitutional error. Id. It emphasized the trial court's conduct had been erroneous, but its refusal to allow counsel to compare burdens of proof did not foreclose counsel's "explaining the concept of beyond a reasonable doubt and exploring the veniremembers' understanding and beliefs of reasonable doubt by other methods." Id. , at 541. It also noted that "[t]his, of course, is different from holding that [erroneously limiting voir dire] may never rise to the level of constitutional magnitude." Id. , at 541.
*546 Our present case is distinguishable from Easley . Here, the error is not that Appellant was denied the right to counsel, but that he was denied the right to an impartial jury. See Franklin , 12 S.W.3d at 477-78. Defense Counsel was completely foreclosed from discussing the possibility of probation by any method, even though the option of probation was ultimately included in the punishment jury charge. As noted above, any potential juror who could not consider awarding Appellant probation if he were convicted is ripe for a challenge for cause. TEX.CODE CRIM.PROC.ANN. art. 35.16(c)(2). The trial judge denied Defense Counsel the ability to discover if any of the venire could not consider probation, and thus denied him the ability to exercise his strikes intelligently. Barajas , 93 S.W.3d at 39. This ultimately denied Appellant the constitutional right to an impartial jury, and this error is analyzed under Rule 44.2(a) 's harmless-error standard, as two of our sister courts have also recently held. Jacobs v. State , 506 S.W.3d 127, 139 (Tex.App.-Texarkana 2016, pet. granted) ; Hill v. State , 426 S.W.3d 868, 876 (Tex.App.-Eastland 2014, pet. ref'd).
In Jacobs , the defendant was charged with unlawful contact with a twelve-year-old girl. Jacobs , 506 S.W.3d at 130. The defendant had previously been convicted of felony carnal knowledge of a juvenile in Louisiana and plead true to this prior conviction. Id. The trial court did not permit defendant's attorney to ask the venire whether they would hold the prosecution to its burden of proof if evidence of an unrelated sexual offense-his Louisiana conviction-was proven by the state. Id. Instead, the trial court allowed him to refer only to a prior "assaultive offense" during his voir dire. Id. Examining the Court of Criminal Appeals' decision in Easley , the court determined the proper analysis for whether the error is constitutional is "not to apply a per se rule to a voir dire error but to determine if the error is substantial enough to [be constitutional error] warrant[ing] a Rule 44.2(a) analysis...." Id. , at 138, quoting Hill , 426 S.W.3d at 875. The court held the trial court's restriction had denied the defendant the right to an impartial jury by preventing counsel from determining if any potential jurors should be struck for cause. Id. , at 139. It concluded this violated the Texas Constitution, and was harmful under the Rule 44.2(a) standard because the potential for an unqualified venire member existed and because the State referred to defendant as a repeat offender in both its opening and closing arguments. Id. , at 139.
Likewise, in Hill , the trial court prevented defense counsel from asking individual members of the venire whether, if defendant was found guilty of aggravated robbery and her felony enhancement was found true, they could consider the full range of punishment from fifteen years to ninety-nine years or life. Hill , 426 S.W.3d at 875. The trial court's decision was based on the prosecutor's objection that the question was an improper attempt to qualify on a specific set of facts. Id. , at 876. On appeal, the state conceded this was error, but argued the error was harmless. Id. Acknowledging Easley , the court held that the significance of the error here was that if a trial court prevents counsel from questioning venire members on whether they could consider the full range of punishment, it deprives defense counsel the intelligent use of his strikes and could possibly lead to an unqualified venire member sitting on the jury. Id. , at 877. To have such an unqualified juror, it held, is a violation of the defendant's right to an impartial jury under the Texas Constitution, and requires a Rule 44.2(a) harm analysis. Id. The court found the error harmful, citing the fact that the seated jurors were never *547 questioned on whether they could consider the full range of punishment if the felony enhancement was proven. Id. , at 878-79.
We find the reasoning of our sister courts to be applicable to the present case. Accordingly, under the harmless-error standard, we must reverse the judgment of punishment unless we can determine beyond a reasonable doubt the error did not contribute to the punishment. TEX.R.APP.P. 44.2. We must therefore, as nearly as possible, determine the probable impact on the jury of the trial court's refusal to allow Defense Counsel the opportunity to ask proper questions of the venire in light of the evidence adduced at trial, and then determine whether we can conclude beyond a reasonable doubt the error did not contribute to his punishment. McCarthy v. State , 65 S.W.3d 47, 55 (Tex. Crim. App. 2001) ; Wesbrook v. State , 29 S.W.3d 103, 119 (Tex. Crim. App. 2000). Neither the State, nor the Appellant, nor the trial judge discussed probation with the venire, and the panel that was ultimately seated was not presented with the possibility of awarding Appellant a probated sentence until the punishment phase of the trial. There is no evidence in the record of allowing the jurors an opportunity to voice concerns of a probated sentence if they found Appellant guilty of causing serious bodily injury to a child under the age of fifteen. The jury sentenced Appellant to ten-years' imprisonment, a sentence that is amenable to probation. But the venire was never asked if they could consider probation as a possible punishment. Without knowing that information, we cannot conclude beyond a reasonable doubt that the trial court's error did not contribute to Appellant's sentence. Accordingly, Appellant's first issue is sustained.
Sufficiency of the Evidence
Even though we have found reversible error in Appellant's first issue, we are required to examine and decide his challenge to the sufficiency of the evidence. McFarland v. State , 930 S.W.2d 99, 100 (Tex. Crim. App. 1996) (remanding where court of appeals reversed for a new trial on the basis of improper jury argument but did not address defendant's legal sufficiency argument).
Standard of Review
In reviewing the legal sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and then determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt in view of that evidence and the reasonable inferences therefrom. Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In doing so, we must "give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " Id. , (quoting Jackson v. Virginia , 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Furthermore, a sufficiency review does not require every fact to "point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances." Johnson v. State , 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).
Analysis
An appellate court reviews the sufficiency of the evidence against the elements of the offense. Villarreal v. State , 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). The elements of the offense are defined by a hypothetically correct jury charge, which accurately sets out the law, is authorized by the indictment, does not *548 unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the offense for which the defendant was tried. Id.
Here, Appellant was tried and convicted for intentionally or knowingly causing serious bodily injury to a child. The hypothetically correct jury charge in this case would list the elements of the offense as follows: (1) Appellant (2) intentionally or knowingly (3) caused C.W. (4) serious bodily injury by submerging his hands into hot liquid. See TEX.PENAL CODE ANN. § 22.04(a)(1) (West Supp. 2017). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ". TEX.PENAL CODE ANN. § 1.07(a)(46) (West Supp. 2017). The distinction between "bodily injury" and "serious bodily injury" must be made on a case-by-case basis. Hernandez v. State , 946 S.W.2d 108, 111 (Tex.App.-El Paso 1997, no pet.). Appellant asserts the record is devoid of evidence C.W. will suffer any permanent impairment or disfigurement beyond minor scarring, and therefore, no rational jury could have found him guilty of the fourth element beyond a reasonable doubt. He also asserts that only once in "a four hour statement did Appellant suggest that he placed [C.W.'s] hands underwater," and further suggests the State's expert witness did not say with certainty what the cause of injury was.
We find Appellant's arguments unpersuasive. First, far from merely suggesting that he placed C.W.'s hands underwater, Appellant admits in his recorded statement that he filled a sink with hot water and submerged C.W.'s hands in the hot water for five-to-ten minutes while the child cried for him to stop. The videotape of this confession was played for the jury during the guilt or innocence phase of the trial. Further, the State's witness, Dr. Dissanaike, testified that based on her experience as an expert in pediatric burns, C.W.'s burns were intentionally inflicted. Once he had been separated from Appellant, C.W. also told a Child Protective Services agent it was Appellant who had burned him. Based on this evidence, a reasonable jury could infer Appellant intended to burn and did burn C.W.'s hands. See Jackson v. State , 399 S.W.3d 285, 291 (Tex.App.-Waco 2013, no pet.) (intent can be inferred from the method used to produce the injuries and the words, acts, and conduct of the defendant). Secondly, whether serious bodily injury occurred depends on the disfigurement or impairment of the injury as it was at the time of the offense, not as it is after medical treatment has lessened its impact. Blea v. State , 483 S.W.3d 29, 35 (Tex. Crim. App. 2016). A jury is free to draw reasonable inferences from the evidence presented to it based on its common sense, knowledge, and experience. Sizemore v. State , 387 S.W.3d 824, 830 (Tex.App.-Amarillo 2012, pet. ref'd). C.W. was hospitalized for two weeks, had to receive a skin graft, and his treating physician predicted he would have to wear compression gloves twenty-four hours a day for three-to-four years. The jury was also shown photographs of C.W.'s burns. A rational jury could have found beyond a reasonable doubt, based on this evidence and the inferences therefrom, the injury as inflicted would cause serious permanent disfigurement or protracted loss or impairment of the function of C.W.'s hands. TEX.PENAL CODE ANN. § 1.07(a)(46). Accordingly, Appellant's second issue is overruled.
CONCLUSION
We affirm the judgment of the trial court as to the conviction of Appellant, but *549 we reverse the judgment insofar as it relates to punishment. We remand this cause to the trial court for a new punishment hearing. See TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (West Supp. 2017).
Hughes, J., Not Participating

Name redacted in accordance with Tex.R.App.P. 9.10.

Tex.Code Crim.Proc.Ann. art. 28.01 (West 2006).

Neither party disputes Appellant was eligible for probation.

Repealed by Act of June 17, 2015, 84th Leg. R.S., ch. 770 (HB 2299), § 3.01, 2015 Tex.Gen.Laws 2321, 2395 (current version at Tex.Code Crim.Proc.Ann. art. 42A.055 (West Supp. 2017)).