

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00018-CR

———————————————

RACHAEL MICHELLE MAINERS, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR19247

---

Before Gabriel, Kerr, and Birdwell, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In three points, Appellant Rachael Michelle Mainers appeals from her conviction for criminal negligence causing serious bodily injury to her 29-day-old son C.M. She argues that the trial court erred by denying her motion for directed verdict of not guilty (point one) and that the evidence was insufficient to establish that her conduct caused serious bodily injury (point two) or that she used or exhibited a deadly weapon—her hand—when committing the offense (point three). Because we hold that her first point is moot and that the evidence supported the jury's findings, we affirm.

### BACKGROUND FACTS

On November 16, 2015, Mainers and C.M.'s father took him to urgent care after Mainers noticed that his leg was "making a popping noise" and that he was not "using his leg appropriately." After urgent care turned them away, they took C.M. to his pediatrician who, after reviewing an x-ray of C.M.'s leg, contacted Child Protective Services (CPS). A CPS representative and a sheriff's-department investigator met with the parents at the doctor's office.

Mainers reported that the injury had happened at 3:00 a.m. that morning when C.M. accidentally rolled off a bed. Mainers told the CPS worker that she was on one side of the bed, and C.M.'s father was sleeping on the other side. Mainers put C.M. on her side of the bed to feed him and change his diaper. The diapers were toward the foot of the bed but on the opposite side from C.M. Mainers knelt on the bed and

reached across to get a diaper, causing C.M. to fall off the bed—which the CPS worker later determined was about two feet high—and land face down on the ground. He began crying but stopped when Mainers picked him up and finished feeding him. She changed his diaper and put him back in bed, where he slept until 9:30 a.m. At a later CPS permanency conference, Mainers told a CPS conservatorship caseworker that she had caused C.M.'s injury by grabbing his leg when he fell off the bed.

After being transferred to Cook Children's Medical Center, C.M. was diagnosed with a spiral fracture in his femur, and his legs were placed in a Pavlik harness while the fracture healed. When he was initially admitted, a referral was made to the hospital's CARE (Child Advocacy and Resource Evaluation) team. The CARE team gets referrals when necessary "to rule out any type of medical conditions that may have cause[d] a child to have injuries and to rule for or against abuse of a child." Christi Thornhill, a Cook Children's nurse practitioner and CARE team member, examined C.M. at that time and again two weeks later.

CPS eventually closed the case as "unable to determine."[1] Meanwhile, Mainers was indicted for the offense of knowingly causing serious bodily injury to C.M. The

---

[1]In a *Brady* disclosure, the State informed Mainers that a CPS caseworker and a CPS attorney had both expressed concern that C.M.'s father had caused the injury. The State further disclosed that C.M.'s father had a daughter who in 2009 had been admitted to the hospital for an arm fracture she had suffered while under her father's care and that the medical history stated that the injury had been caused by falling off her bunk bed. But at trial Mainers did not produce any evidence relating to these disclosures in the guilt–innocence stage.

3

indictment further alleged that during the commission of the offense, Mainers used a deadly weapon, to wit: her hand.

At trial, Thornhill testified that a 29-day-old child cannot yet roll and that a spiral fracture could not be caused by C.M.'s falling off the bed, that it was unlikely to see that type of injury from Mainers's simply grabbing his leg because spiral fractures do not occur without some sort of twisting motion, and that in her opinion the injury was caused by abuse.

The jury convicted Mainers of criminal negligence causing serious bodily injury to a child. It further found that she used or exhibited a deadly weapon and assessed punishment at four years' confinement and a $10,000 fine.

## STANDARD OF REVIEW

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

DISCUSSION

## I. Any error in the trial court's denying the directed verdict is moot.

At the close of the State's case, Mainers moved for a direct verdict of not guilty on the ground that the State failed to prove that she knowingly caused bodily injury to C.M. The trial court denied the motion. In her first point, Mainers contends that the trial court erred in denying her motion because the State failed to produce sufficient evidence to prove beyond a reasonable doubt that she knowingly caused C.M.'s injury.

The jury did not convict Mainers of knowingly causing C.M.'s injury. Instead, the jury convicted her of the lesser-included offense of criminal negligence causing injury to a child with serious bodily injury. Accordingly, this point is moot, and we do not address it. *See* Tex. R. App. P. 47.1; *Berman v. State*, No. 02-12-00119-CR, 2014 WL 2145592, at *2 (Tex. App.—Fort Worth May 22, 2014, pet. ref'd) (mem. op., not designated for publication); *Terrell v. State*, No. 06-01-00011-CR, 2001 WL 1663990, at *1 (Tex. App.—Texarkana Dec. 28, 2001, no pet.) (not designated for publication).

## II. The evidence sufficed to establish that Mainers's conduct caused serious bodily injury.

Mainers argues in her second point that the evidence was insufficient to prove beyond a reasonable doubt that her conduct caused serious bodily injury to C.M. because (1) there was no evidence that the injury created a substantial risk of death

and (2) the evidence was insufficient to prove that the injury caused serious permanent disfigurement or protracted loss or impairment of CM's leg function.

A person commits an offense if, with criminal negligence, she causes serious bodily injury to a child. Tex. Penal Code Ann. § 22.04(a), (g). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46). "[W]hether serious bodily injury occurred depends on the disfigurement or impairment of the injury as it was at the time of the offense, not as it is after medical treatment has lessened its impact." *Quezada v. State*, 553 S.W.3d 537, 548 (Tex. App.—El Paso 2018, no pet.) (citing *Blea v. State*, 483 S.W.3d 29, 35 (Tex. Crim. App. 2016)).

Asked what happens to a child with a broken leg if the bone does not heal properly, nurse practitioner Thornhill responded that "[l]ong-term he could have nonunion, where it just doesn't grow back over a period of months and it will require surgery. If they grow back and it's not straight, one leg can be shorter than the other, causing problems with mobility long-term." She stated that at her follow-up examination of C.M. two weeks after her initial examination, he had not experienced any delay in his milestones. But in her opinion, the injury required medical treatment to prevent future disability, and if C.M. had not been placed in the Pavlik harness, his bone would not have healed as well as it did.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have found that at the time of the offense and before any medical treatment, C.M.'s injury created a substantial risk of serious permanent disfigurement or protracted loss or impairment of his leg's function. *See Queeman*, 520 S.W.3d at 622; *Quezada*, 553 S.W.3d at 548. We overrule Mainers's second point.

## III. The evidence sufficed to support the jury's finding that Mainers used or exhibited a deadly weapon.

In her third and final point, Mainers argues that the evidence is insufficient to support the jury's finding that she used or exhibited a deadly weapon. She contends that there was no evidence of C.M.'s suffering multiple injuries or protracted loss or use of his leg, that he did not lose consciousness or suffer from nausea or vomiting, that he did not have pain in several parts of his body, and that the injury did not cause serious permanent disfigurement.

A hand may be a deadly weapon based on its manner of use or intended use and its capacity to produce death or serious bodily injury. *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd). A person need not have intended to cause serious bodily injury or death or to have actually caused serious bodily injury or death for her hand to constitute a deadly weapon. *Id.* As long as the totality of the evidence shows that the defendant's hand was capable of causing serious bodily injury or death in the manner that she used it, the jury is authorized to find that her hand qualified as a deadly weapon. *Id.* A factfinder may consider such evidence as the

manner in which the defendant used her hand and testimony that her hand had the potential to cause death or serious bodily injury.

The jury heard evidence that Mainers admitted to having been the one to grab C.M.'s leg and cause the injury. The jury further heard evidence about how Mainers used her hand and whether her hand was capable of causing serious bodily injury. Thornhill explained that a spiral fracture "is caused by a twisting motion of a bone," a motion that, in a nonambulatory child such as C.M., has to come from an outside force. She stated that C.M. could not sustain that sort of injury in accidentally falling from a bed because some sort of twisting motion is needed to cause that type of fracture. She acknowledged the possibility that if a child is falling off the bed and somebody grabs his leg, that action could cause a twisting motion leading to a spiral fracture, but she clarified that it would have to have been from a violent force pulling him back. She further stated that it was unlikely that that type of injury would result from an infant's falling and being grabbed by the leg because at that young age— 29 days old—"the bones aren't hardened yet. They're very soft and cartilaginous. It's very difficult to get a broken bone in a neonate." She reiterated that a spiral fracture requires twisting or "torque-type forces on a bone."

The jury heard evidence from which a rational factfinder could find beyond a reasonable doubt that, using her hand, Mainers twisted C.M.'s leg in a manner capable of causing a spiral fracture in his femur that, if left untreated, created a substantial risk

8

of serious permanent disfigurement or protracted loss or impairment of his leg's function. We overrule her third point.

## CONCLUSION

Having overruled Mainers's three points, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 15, 2019